## IN RE THE LEGISLATIVE ADJOURNMENT.

Under Article 7, § 6, of the Constitution of Rhode Island, the Governor has power to adjourn the two Houses of the General Assembly after a disagreement between them as to the time or place of adjournment has been certified to him by either.  This power he may exercise whatever be the state of business between the two Houses, and when after a certification of disagreement the power has been exercised, this court cannot inquire into the facts on which the Governor acted.

After the Governor had thus adjourned the General Assembly, the House of Representatives requested the opinion of the court on certain questions of law.

The court held that there were no questions properly before it, but added :

That as an abstract proposition of law and in certain contingencies of which illustrations are given, notwithstanding Article 4, § 9, of the Constitution, and notwithstanding the votes for general officers have not been counted in grand committee, the General Assembly may adjourn for more than two days, and

hence that one House may pass a resolution for such adjournment and transmit it to the other.

The General Assembly of Rhode Island met at Newport pursuant to the Constitution, on the last Tuesday in May, 1893, *i. e.* May 30.   After the two Houses had organized, the House of Representatives sent an invitation to the Senate to join it in grand committee in order to count and to declare the votes cast for general officers, and to elect general officers in case of a failure to elect by the electors.

June 1, 1893, the Senate by resolution declined this invitation, because, " since the organization of the House, that body, to the knowledge of the members of the Senate, had unseated certain of its members, and seated a person not elected, in violation of law and in defiance of the Constitution of the State, thereby changing the character of the grand committee, and that therefore the House as at present constituted is not the body with which the Constitution contemplates that the Senate should meet for the purpose named in the resolution."

June 1, 1893, the Senate voted to adjourn to meet at the State House in Providence on the last Tuesday in January, 1894, and transmitted this vote to the House.

June 2, 1893, the Senate, " owing to irreconcilable differences " between it and the House of Representatives as to the time and place of adjournment, voted to adjourn to meet at the State House in Providence on the last Tuesday of January, 1894.   It also adopted a resolution certifying to the Governor a disagreement between it and the House of Representatives as to the time and place of adjournment.   The same day, June 2, the Governor adjourned the General Assembly to meet at the State House in Providence on the last Tuesday in January, 1894.   The House of Representatives then adopted the following resolution :

"*Resolved*, That the Honorable Judges of the Supreme Court be and are hereby requested to give to the House of Representatives their opinion upon the following questions of law.

"*First.* Has the Senate the constitutional power at the May session to pass a resolution of adjournment for a longer period than two days, until after it has joined with the House of Representatives in grand committee, request having been made to the Senate by the House of Representatives to join in such grand committee for the purpose of counting and declaring the votes cast for general officers at the preceding April election?

"*Second.* In case a resolution of adjournment to the city of Providence to the fourth Tuesday in January following should have been adopted by the Senate before joining the House of Representatives in grand committee at the annual May session for the purpose of counting and declaring the votes cast for general officers at the preceding general election, should not have been acted upon by the House of Representatives, does such a state of things constitute a 'disagreement' on the subject of adjournment, which confers upon the Governor the power to adjourn the General Assembly under section 6, article VII. of the Constitution?

"*Third.* Can the General Assembly at the May session be adjourned by the Governor under the power conferred upon him by section 6, article VII. of the Constitution, until after the two houses have joined in grand committee for the purpose of counting and declaring the votes cast for general officers at the preceding April election?"

This resolution was indorsed "In the House of Representatives, June 2, 1893. Read and passed, John E. Conley, clerk," and was transmitted by the Speaker of the House to the court.

OPINION OF THE COURT.

*August* 12, 1893.

*To the Honorable Franklin P. Owen, Speaker of the House of Representatives:*

We have received from you a resolution, purporting to have been passed by the House of Representatives, propound-

ing certain questions of law upon which we are requested to give our opinion.

Before proceeding to specifically consider said questions, we feel called upon to say, that from the character and tenor thereof we must infer that prior to the passage of the resolution submitting said questions to us, the General Assembly had been prorogued by His Excellency the Governor.

This being so, and assuming, as we are bound to do, that the said act of the Governor was legal, said resolution was not passed by the House of Representatives, and we are not, therefore, called upon to take notice of the same.   See Article 10, § 3[1] of the Constitution.   The gravity of the situation, however, in which both the legislative and executive branches of our State government are at present placed, of which we cannot fail to take notice, and the importance of the principles and rights involved, are a sufficient warrant, we think, for us to assume the right and duty of replying to said questions.

In doing so we have the honor to say :

*First.*   That under the provisions of Article 4, § 9[2] of the Constitution, neither house has the power, without the consent of the other, to adjourn for more than two days, nor to any other place than that in which they may be sitting.   A condition of things can be imagined, however, which would warrant an adjournment in the circumstances stated in the questions.   For example, suppose the House of Representatives should unseat or expel thirty-five members, leaving only a bare quorum and several towns unrepresented.   The Constitution clearly implies that the representation of all the

---

[1]As follows :

Sec. 3.  The judges of the supreme court shall, in all trials, instruct the jury in the law.  They shall also give their written opinion upon any question of law whenever requested by the governor, or by either house of the general assembly.

[2]As follows :

Sec. 9.  Neither house shall, during a session, without the consent of the other, adjourn for more than two days, nor to any other place than that in which they may be sitting.

towns shall be complete, even though all the members-elect may not attend the session.

This implication is found in the fact that members of the preceding body may hold their seats until their successors are qualified to act; and in the further provision of Article 8, § 7,[1] that where a failure to elect a Governor is produced by rejecting the entire vote of any town, city, or ward, a new election shall be ordered. The idea is plain that each town shall be entitled to its full representation and vote, both in an election by the people, or, in case of failure, by the Assembly. If, therefore, either House should, by its own action, deprive towns of representation to the extent supposed, we do not think it could be claimed that the other House is bound to go into grand committee with a House so constituted. The supposed case is an extreme one, but it illustrates the principle that each town is entitled to the full representation which the Constitution contemplates, and this principle is equally violated, though not to the same extent, if one town is illegally deprived of its full representation. In such cases the Assembly may properly adjourn until the vacancies can be filled.

Other emergent causes, sufficient to justify an adjournment, may arise, such as an epidemic, after the Assembly has convened; a riot or great public disturbance; the destruction of the State House; a palpable violation of the Constitution by the expulsion of members contrary to its provisions, whereby the character of the grand committee is changed, and the like.

In the latter case, notwithstanding the fact that each House is to be the judge of the qualifications of its own

---

[1] As follows:

SEC. 7. If no person shall have a majority of votes for governor, it shall be the duty of the grand committee to elect one by ballot from the two persons having the highest number of votes for the office, except when such a result is produced by rejecting the entire vote of any town, city, or ward, for informality or illegality, in which case a new election by the electors throughout the state shall be ordered; and in case no person shall have a majority of votes for lieutenant-governor, it shall be the duty of the grand committee to elect one by ballot from the two persons having the highest number of votes for the office.

members, a decent self-respect would entitle the other branch to refuse to be a party to such illegal constitution of the grand committee, and to base its action thereon.

The question then resolves itself into this :

Whether the Assembly by joint resolution may adjourn for more than two days after both Houses are organized and before counting the votes.

For what both bodies may pass by concurrent vote, one may first pass and transmit to the other for concurrence.

We regard the provision of the Constitution requiring the Assembly to count the votes at the May session as in the highest degree imperative. Yet, as we have said, there may be circumstances which would justify and indeed require the postponement of this duty for more than two days.

Hence as an abstract proposition we must answer the question in the affirmative. Whether any given state of affairs is one to justify or demand such adjournment, and how long such adjournment should be, are legislative questions necessarily left to the decision of the body whose action is proposed, and when decided by such body can only be reviewed by the approval or rebuke of the electors.

*Second.* In reply to the second question, we have to say that whether or not the circumstances stated therein constitute such a " disagreement " as is contemplated under the provision of Article 7, § 6', of the Constitution, is a question which is not within either the province or power of the judiciary to determine, but which, under the Constitution, rests solely in the sound judgment and discretion of the chief executive of the State. Whatever our personal opinions might be as to the propriety of certifying a disagreement under the circumstances stated, an expression of such opinion, after the act is done, with no power to correct it, would amount only to a criticism upon the action of a coördinate branch of the

---

[1] As follows :

SEC. 6. In case of disagreement between the two houses of the general assembly, respecting the time or place of adjournment, certified to him by either, he (the governor) may adjourn them to such time and place as he shall think proper: Provided that the time of adjournment shall not be extended beyond the day of the next stated session.

government, which it would be improper to make. For it must be constantly borne in mind that the powers of our government are distributed into three departments : the legislative, the executive, and the judicial, all coördinate and of equal authority in their proper spheres, though mutually interwoven, and, in some measure, dependent upon each other. As said by the great expounder of constitutional law : "A separation of departments, so far as practicable, and the preservation of clear lines of division between them, is the fundamental idea in the creation of all our constitutions, and doubtless, the continuance of regulated liberty depends on maintaining these boundaries." Works of Daniel Webster, Vol. IV. p. 122. See also Works of Rufus Choate, by Samuel Gilman Brown, p. 364.

The powers vested in the executive department are to be exercised by the Governor under his oath of office, and under the express constitutional injunction that he "shall take care that the laws be faithfully executed" ; and he is responsible to the people alone for the manner in which he discharges the duties of his high office. If he violates the Constitution or the laws which he is sworn to support, he may be impeached and removed from office, and may also be indicted and punished like any other person. See Article XI. of the Constitution. But for the exercise of his powers and prerogatives as Governor, neither the legislative nor the judicial department of the government has any power to call him to account, nor can they or either of them review his action in connection therewith. In short, it cannot be questioned that the Governor is supreme and independent in the executive department, as is the legislature in the legislative, and the court in the judicial department of the government. *The People* v. *Mahoney*, 13 Mich. 481 ; *Sutherland* v. *The Governor*, 29 Mich. 320 ; *Hovey, Governor* v. *The State*, 127 Ind. 588–600.

Moreover, this is a case in which the executive department of the State government has the power and duty to finally pass upon a question of constitutional construction. It belongs to that class of cases, as well stated by Judge Cooley

in his excellent work on Constitutional Limitations, p. 54, "where, by the constitution, a particular question is plainly addressed to the discretion or judgment of some one department or officer ; so that the interference of any other department or officer, with a view to the substitution of its own discretion or judgment in the place of that to which the constitution has confided the decision, would be impertinent and intrusive." "Under every constitution," says the same learned author, "cases of this description are to be met with, and, though it will sometimes be found difficult to classify them, there can be no doubt when the case is properly determined to be one of this character, that the rule must prevail which makes the decision final."

The power of the executive which we are considering is a political power, "in the exercise of which," in the language of Chief Justice Marshall in *Marbury* v. *Madison*, 1 Cranch, 137, "he is to use his own discretion, and is accountable only to his country in his political character, and to his own conscience, and whatever opinion may be entertained of the manner in which the executive discretion may be used, still there exists no power to control that discretion." "The subject is political." "It respects the State, not individual rights, and being intrusted to the executive, the decision of the executive is conclusive." See also *McCauley* v. *Brooks*, 16 Cal. 11, 54 *sq.*; *United States* v. *Arredondo et als.*, 6 Peters, 691, 729–730 and cases cited ; *Hawkins* v. *The Governor*, 1 Ark. 570, 586–596. In *Mauran* v. *Smith, Governor*, &c. 8 R. I. 192–223, which was a petition for a writ of *mandamus* to compel the Governor to prefer charges against, and convene a court martial for the trial of the petitioner, the general question here involved was very fully and ably discussed by eminent counsel, and it was held by this court, Durfee, J., giving the opinion, that the court had no authority to grant the writ for the reason that the governor while acting within the sphere of his authority, constituted an independent coördinate department of the government. See also *Taylor* v. *Place*, 4 R. I. 324, 330–364. We can no better define and illustrate the power and duty of the judiciary in the

premises, than by quoting from the able opinion of Caton, C. J., in *The People* v. *Bissell*, 19 Ill. 229, 231.   He says :—

"To the judiciary is confided the power and the duty of interpreting the laws and the constitution whenever they are judicially presented for consideration.   Hence it becomes our duty to determine what is the meaning of the laws passed by the legislature, and, also, whether those laws are such as the legislature was authorized by the constitution to pass.   So, also, of the acts of the executive; we are bound to determine whether such acts are authorized by the laws and the constitution, whenever they are brought before us judicially, but not otherwise.   And hence the judicial department of the government exercises a certain controlling, or rather restraining power, over both the other departments of the government.   Notwithstanding all this, when carefully considered, it will be seen that each department, within its proper constitutional sphere, acts independently of both the others, and restraint is only placed upon it when such sphere is actually transcended, or express authority is given by the constitution, for restraint or control, by another department.   As from necessity and the very nature of all government, there must be an ultimatum somewhere, whose duty it is to determine whether such sphere has been passed or not ; that duty, in most cases, falls on the judicial department, from the fact that in this department is reposed the responsibility of enforcing or giving effect to the acts of the other departments.   But it is only when thus called upon, in some form known to the law, to give effect to such acts of the other departments, that the judiciary can determine whether such acts were done in the exercise of a constitutional power.   In no other way, nor in any other case, can this department construe the constitution for, or exercise any control over, any other department. Where final action upon any subject is confided to either of the other departments, there the responsibility must rest, of conforming such action to the law and the constitution.

"It is because such final action is generally devolved upon the judiciary, that the judiciary is most frequently called

upon to give a final and conclusive construction to the constitution and laws. It results, therefore, from this philosophical arrangement of our governmental system, that the control which the judicial department exercises over the others, is of a restraining, and not of a compulsory, power. But this is only practically, and not literally so. We may not enjoin the others from doing an unconstitutional act, but by refusing to give effect to such act, or relieving against it, when properly and judicially applied to for that purpose, we may restrain them. We cannot restrain the Governor from issuing the bonds of the State, contrary to law, but when the question is properly presented before us, we can declare such bonds void ; and so of a patent for the public land, which he might issue. And so if he should step beyond his constitutional sphere, and unlawfully imprison a party, we could discharge such party on *habeas corpus*. But we have no power to compel either of the other departments of the government to perform any duty which the constitution or the law may impose upon them, no matter how palpable such duty may be, any more than either of those departments may compel us to perform our duties. The Governor is, and must be, as independent of us as is the legislature, or as we are of either of them."

*Third.* As to the third and last question submitted to us, we have to say that under Article 7, § 6, of the Constitution, above referred to, the *power* of the Governor to adjourn the General Assembly upon the happening of the event therein mentioned, is general, and not dependent upon the fact as to whether the two Houses have joined in grand committee or not. The exigency provided for by the Constitution had arisen. The necessary and only warrant required for action on his part was the certificate of disagreement. It is true he was not bound to act on that certificate. The records of both Houses are public, and the executive is as fully entitled to take notice of them as the judiciary ; he may go behind the certificate and determine by an inspection of the records of the two Houses whether, in fact, the disagreement exists as certified ; and even if the record of one House should not

disclose that it had acted, non-action is sometimes equivalent to adverse action, and may be so treated by the executive in determining whether a disagreement exists which calls for the exercise of his constitutional prerogative.

The argument as to jurisdiction implies a power of review by the judiciary. But this question being left by the Constitution entirely in the hands of the legislature and the executive, we think we are bound to consider action taken as an accomplished fact. It is like the judgment of a court of general jurisdiction, which is final and conclusive. Whenever, therefore, there shall be a disagreement between the two Houses as to the time or place of adjournment certified to the Governor by either, and, as before stated, he is the sole judge as to the fact of the existence of such disagreement upon such certification to him, we think he has the constitutional *power* to adjourn them under said section 6 of the Constitution. The state of the business pending before the Assembly would doubtless be taken into account both by the House taking the initiative in the matter of the adjournment, and also by the Governor in declaring that the exigency provided for in said section had arisen; but we do not think the *power* granted therein would be affected thereby. Nor, it appearing of record that by reason of the certification aforesaid he had jurisdiction in the premises, have we any authority to inquire into the facts upon which the Governor based his said action. For, as said by Judge Story in *Martin* v. *Mott*, 12 Wheat. 19, 31: "Whenever a statute gives a discretionary power to any person to be exercised by him upon his own opinion of certain facts, it is a sound rule of construction that the statute constitutes him the sole and exclusive judge of the existence of those facts." We therefore answer said third and last question in the affirmative.

CHARLES MATTESON,
JOHN H. STINESS,
P. E. TILLINGHAST,
GEORGE A. WILBUR,
HORATIO ROGERS,
WM. W. DOUGLAS.