# N. J. WALKER V. WEAVER BAKER, CHAIRMAN OF BOARD OF CONTROL, ET AL.

No. A-876. Decided July 17, 1946.
Rehearing overruled August 30, 1946.
(196 S. W., 2d Series, 324.)

Mr. Chief Justice Alexander and Justices Sharp, Simpson and Taylor, dissenting.

*Henry Kyle,* of San Marcos, *Walyer E. Boyd, Weaver Moore* and *Morrow, Brelsford, Boyd and Murrin,* all of Houston, for relator.

Confirmation by the Senate of appointments by the Governor is not a legislative act, but is an executive or administrative function, and the Texas Senate had the power, at a regular session thereof, to set a future time to act on appointments of the Governor. Denison v. State, 61 S. W. (2d) 1017; State v. Williams, 222 Mo. 268, 121 S. W. 64; People v. Blanding, 63 Calif. 333; Ferguson v. Maddox, 114 Texas 85, 263 S. W. 888; People ex rel Robin v. Hayes, 143 N. Y. S. 325.

*Grover Sellers,* Attorney General, *Carlos C. Ashley, Ocie Speer, W. V. Geppert, Richard H. Cocke,* and *Jackson Littleton,* assistants Attorney General, for respondent.

A sine die resolution may not be qualified, and any attempt of the Senate to convene itself for the purpose of confirming recess appointees of the Governor contravenes Article 4, sections 8 and 12 of the Constitution of Texas; also Article 3, sections 5 and 17. Stamps v. Tittle, 167 S. W. 776; Houston Tap & B. R. Co. v. Randolph, 24 Texas 317; 11 Am. Jur., 886; 59 C. J. 91.

MR. JUSTICE BREWSTER delivered the opinion of the Court.

This is a mandamus proceeding brought by N. J. Walker, relator, against Weaver Baker, Tom DeBerry and Hall Logan, members of the Board of Control of the State of Texas, and George H. Sheppard, Comptroller of Public Accounts, respondents, to compel payment of a claim of $87.57 for printing the Senate Journal for sessions of the 49th Senate of Texas held on January 8, 9 and 21, 1946.

The regular session of the 49th Legislature of Texas adjourned sine die on June 5, 1945, pursuant to House Concurrent Resolution No. 90, which was:

"Be it resolved by the House of Representatives, the Senate concurring, that the regular session of the 49th Legislature shall stand adjourned sine die at 12 o'clock noon on June 5th, 1945."

Te Senate adjournment motion was that "the regular session of the Senate adjourn sine die for legislative purposes, subject to the provisions of S. R. 88."

Senate Resolution No. 88, referred to in the adjournment motion, was adopted by the Senate on June 2, 1945, and was as follows:

"Be It Resolved by the 49th Senate of Texas that:

"The 49th Senate of Texas shall meet and convene in session in the Senate Chamber at Austin, Texas, on the 8th day of January, 1946, at 12 o'clock noon for the purpose of acting on and confirming or rejecting such appointments and nominations of the Governor as the Constitution and laws of the State require the Senate to act upon and confirm or reject."

In obedience to that resolution the Senate convened in the Senate Chamber at Austin on January 8, 1946, when, for want

of a quorum, it stood at ease until January 9, 1946, at 11 a. m. A quorum being then present, the Senate notified the Governor that it was in session and ready to receive his nominations for public office. Then it adopted the following motion:

"That the Senate stand at ease until 12 o'clock noon Monday, January 21st, 1946, subject to being called to order sooner by the President upon 24 hours notice, and that the Secretary of the Senate be directed to receive and accept any communications from the Governor."

The Senate was called to order at 12 m. on January 21, 1946, but there was no communication from the Governor. Thereupon a member presented a list of all appointments made by the Governor after June 4, 1945, and before January 21, 1946, the list being officially certified by Hon. Claude Isbell, Secretary of State. The Senate then went into executive session and either confirmed or rejected all nominees on the list which were subject to Senate confirmation.

The Senate Journal for these meetings was printed by an Austin concern under its contract with the Board of Control to print the Journal for the fiscal year 1945-1946. The printers assigned their claim for this printing to relator for a valuable consideration.

Respondents refused to pay the account "for the sole and only reason" that they "have been advised by the Attorney General of Texas that the sessions of the Senate of Texas on the 8th, 9th and 21st of January, 1946, were illegal and void and were not in law sessions of the 49th Senate of Texas." Respondent Sheppard certified "that the money is available in the contingent expense fund of the 49th Legislature to pay such account if the Senate sessions of January 8th, 9th and 21st, 1946, were valid sessions of the Senate of Texas."

Thus is raised the precise question for our decision, namely, whether the Senate of Texas can lawfully convene, of its own motion, to consider recess appointments made by the Governor.

While not decisive of the question, this apparently is the first time in the history of Texas that the Senate has attempted to exercise the power here asserted.

Under the Constitution of 1845, Art. V, Sec. 20, it was provided: "Nominations to fill all vacancies that may have accrued

during the recess shall be made to the Senate during the first ten days of its session. And should any nomination so made be rejected the same individual shall not again be nominated during the session to fill the same office. And should the Governor fail to make nominations to fill any vacancy, during the session of the Senate, such vacancy shall not be filled by the Governor until the next meeting of the Senate."

The same language appeared as Art. V, Sec. 20, of both the Constitutions of 1861 and 1866, except that in the former the word *all* before "vacancies" in the first sentence was omitted.

Art. IV, Sec. 12, of the Constitution of 1869, provided: "Nominations to fill vacancies occurring in the recess of the Legislature, shall be made by the Governor during the first ten days of its session; and should any such nomination be rejected, the same person shall not again be nominated, during the session, to fill the same office."

The language of our present Constitution (1875) is: "All vacancies in State or district offices, except members of the Legislature, shall be filled unless otherwise provided by law by appointment of the Governor, which appointment, if made during its session, shall be with the advice and consent of two-thirds of the Senate present. If made during the recess of the Senate, the said appointee, or some other person to fill such vacancy, shall be nominated to the Senate during the first ten days of its session. If rejected, said office shall immediately become vacant, and the Governor shall, without delay, make further nominations, until a confirmation takes place. But should there be no confirmation during the session of the Senate, the Governor shall not thereafter appoint any person to fill such vacancy who has been rejected by the Senate; but may appoint some other person to fill the vacancy until the next session of the Senate or until the regular election to said office, should it sooner occur. Appointments to vacancies in offices elective by the people shall only continue until the first general election thereafter." Art. IV, Sec. 12.

There is no substantial difference in these several provisions, in relation to the question before us, except that the Constitution of 1869 refers to sessions and recesses of the *Legislature* while the others refer to sessions and recesses of the *Senate*.

■ With the Senate's power and duty of confirmation thus prescribed in the Constitution for a hundred years, it is significant

that forty-eight legislatures passed before it occurred to the Senate that the power to confirm or reject the Governor's appointments implies a duty to convene at will for that purpose—before anyone decided, to quote relator's brief, that the Senate "being under the duty of confirmation and there being no prohibition, it necessarily follows that the power to convene must follow the duty, and that the power rests where the duty· is placed." Sharp differences have arisen between the Governor and the Senate at intervals during a century of statehood; therefore, had it not been at least doubtful as to the power of the Senate to convene itself to pass on the Governor's recess appointments, it is reasonable to assume that some earlier Senate would have attempted to exercise it. That no such attempt was made before 1945 becomes more significant in view of the fact that relator does not contend that the authority is expressly conferred upon the Senate by the Constitution. In that situation we have the principle that although nonuser will not defeat the power to exercise rights expressly delegated in a written Constitution, an established practical construction "should not be disregarded unless the terms of the provision furnish clear and definite support for a contrary construction." 11 Am. Jur., p. 701, Sec. 80. According to another authority, "Where there has been a practical construction, which has been acquiesced in for a considerable period, considerations in favor· of adhering to this construction sometimes present themselves to the courts with a plausibility and force which it is not easy to resist." Cooley, Constitutional Limitations (8th Ed.), Vol. 1, p. 144. As declared by this court, "The rule is that contemporaneous construction of a constitutional provision by the Legislature, continued and followed, is a safe guide as to its proper interpretation." Jones v. Williams, Collector, 121 Texas, 94, 45 S. W. /(2d) 130, 79 A. L. R., 983. Again, it has been said that "while not conclusive, the construction given by the Legislature to those provisions of the Constitution dealing with legislative procedure is entitled to great weight." Johnson v. City of Great Falls, 38 Mont., 369, 99 Pac., 1059. Other authorities are Mumme et al v. Marrs, Supt., 120 Texas, 383, 40 S. W. (2d) 31; G. C. & S. F. Ry. Co. v. City of Dallas (Com. App.), 16 S. W. (2d) 292; Myers, Admin. v. United States, 272 U. S., 52, 47 Sup. Ct., 21, 71 L. Ed., 160.

■■ But more positive principles determine this case against relator. Against him is that stated by this court in Parks et al v. West et al, 102 Texas, 11, 111 S. W., 726: "It is a rule for the construction of Constitution, constantly applied, that where

a power is expressly given and the means by which, or the manner in which, it is to be exercised is prescribed, such means or manner is exclusive of all others." When the Constitution defines the circumstances under which a right may be exercised * * *, the specification is an implied prohibition against legislative interference to add to the condition." Cooley's Constitutional Limitations (8th Ed.), Vol. 1, p. 139. The application of that principle to this case is clear. Under the constitutional provision above quoted (Art. IV, Sec. 12), the Senate has the express power to confirm or reject the Governor's appointments to vacancies in state or district offices. It follows as a matter of course that there must be some means or manner by which the right can be exercised; that is, under the issue before us, there must be some session or sessions of the Senate in order that it may have an opportunity to confirm or reject the Governor's appointments. That is provided in Art. III, Sec. 5; "The Legislature shall meet every two years at such time as may be provided by law and at other times when convened by the Governor. When convened in regular session, the first thirty days thereof shall be devoted to the introduction of bills and resolutions, acting upon emergency appropriations, passing upon the confirmation of the recess appointees of the Governor and such emergency matters as may be submitted by the Governor in special messages to the Legislature * * *." Moreover, Art. IV, Sec. 8, empowers the Governor to call special sessions of the Legislature, and its effect is to rest that matter exclusively in his judgment and discretion. In Re State Census (Col.), 21 Pac., 477. Since a meeting of the Legislature is a meeting of the Senate, these provisions furnish a regular session of the Senate every two years and a special session at such other times as the Legislature may be convened by the Governor. The means being thus expressly provided for the Senate to be in session and thereby to have an opportunity to consider the Governor's appointments, it follows that any authority in the Senate to convene itself at other times for that purpose is excluded. Authorities, next supra; Houchins v. Plainos, 130 Texas, 413, 110 S. W. (2d) 549; Crabb et al v. Celeste Independent School District, 105 Texas, 194, 146 S. W., 528; Story On the Constitution (4th Ed.), Vol. 1, Sec. 448, p. 331.

In the face of this rule, the argument that the power of the Senate to convene itself exists in order "to prevent unworthy persons from being placed or continuing in high office to the detriment of the State" must be rejected. As said by the Supreme Court of Illinois, in Field v. People, 2 Scam., 79, 83,

"Where the means for the exercise of a granted power are given, *no other or different means can be implied, as being more effectual or convenient.*" (Italics ours). That statement is quoted with approval in Cooley's Constitutional Limitations (8th Ed.), Vol. 1, p. 139, with the observation that it "applies to the exercise of power by all departments and all officers." And Cooley's text is, in turn, cited with approval in Ferguson v. Wilcox, 119 Texas, 280, 28 S. W .(2d) 526. In that situation there can be no enlargment by implication or inference, irrespective of the reasons for the attempt.

■ In this connection we are not overlooking the fact that the Constitution provides in Art. III, Sec. 1, that "the Legislative power of this state shall be vested in a Senate and House of Representatives, which together shall be styled 'The Legislature of the State of Texas' ", which means all legislative power—the power to make, alter and repeal laws—not expressly or impliedly forbidden by other provisions of the State and Federal Constitutions. Brown v. City of Galveston, 97 Texas, 1, 75 S. W., 488; Scribner's Sons v. Marrs, Supt., 114 Texas, 11, 262 S. W., 722; Smisson v. State, 71 Texas, 222, 9 S. W., 112. But that rule applies to *legislative* power to be exercised by the *Legislature,* not at a *non-legislative* power to be exercised by the *Senate.* Confirmation or rejection of the Governor's appointments is an *executive* function expressly delegated to the *Senate.* Denison v. State (Civ. App.), 61 S. W. (2d) 1017 (er. ref.),. To that extent it represents a permitted invasion by one branch of the Legislature of that field of power which is confided to the executive department by Art. II, Sec. 1, of the Constitution. Under those circumstances there is no ground for relator's contention that the power asserted in this case exists because not expressly prohibited. It being a power ordinarily and intrinsically belonging to another department of the government, 16 C. J. S., p. 509, Sec. 168, and the means and time for its exercise being provided in Art. III, Sec. 5, supra, no other or different means can be implied. Ferguson v. Wilcox, supra. In other words, since the Constitution specifies the circumstances under which the Senate may defeat the Governor's appointments, there is an implied prohibition against its power to add to those circumstances. Arnold v. Leonard, 114 Texas, 535, 273 S. W. p. 799. In Lytle v. Halff & .Bro., 75 Texas, 128, 132 S. W., 610, this court said: "The declaration (of Art. II, Sec. 1) is that the executive, legislative, and judicial departments shall exist—this is the fiat of the people; and neither one nor all of the departments so created can enlarge, restrict or destroy the

powers of any one of them except as the power to do so may be expressly given by the Constitution." See French et al v. Senate of State of California (Cal.), 80 Pac., 1031, 1032; In Re Legislative Adjournment (R. I.), 27 Atl., 324, 327.

Not only are there no implications in support of the power here asserted, but there are definitely some against it.

■ Under Art. IV, supra, as well as under our four previous Constitutions, if the Governor has made an appointment during recess of the Senate he must submit the name of that appointee or some other to the Senate "during the first ten days of its session." Undoubtedly that means that he may wait ten days after the Senate convenes to submit his recess appointments. The Senate obviously so construed it in this case when it stood at ease from January 9 until January 21, "subject to being called to order sooner by the President upon 24 hours notice." For the Governor to prepare a list of persons appointed to office since the Senate was last in session would seem to be a simple process requiring little time, certainly not ten days. So we think that had the framers of this provision contemplated that the Senate could convene itself for the purpose of passing on the Governor's recess appointments they would have required him to submit those appointments immediately upon receiving official notice that the Senate was in session. We cannot ascribe to them any intention to prescribe that the Senate meet and organize and then mark time for ten days awaiting the Governor's pleasure in the matter of making his nominations. That that would be a pointless procedure would doubtless have suggested itself to the framers of some one of our five successive Constitutions had they intended Senate sessions such as that involved here. Therefore it must have been contemplated that whenever the Senate should come into session it would be convened for business other than, and additional to, that of passing on the Governor's recess appointments.

■ Again, if the Senate has the power to convene at will, as relator claims, it has the power to have as many sessions as it elects; in fact, it could remain in continuous session for the purpose of passing on the Governor's appointments; but a member could not collect any pay for his attendance, because he would not be attending a session of the *Legislature*. Under Art. III, Sec. 24, as amended in 1930, the pay of members of the Legislature is fixed at $10.00 per day for the first 120 days of each session and not exceeding $5.00 for each day thereafter.

This per diem, multiplied by the number of days the Legislature remains in regular or called session, is the entire compensation a member is entitled to receive, and for it he must attend the legislative sessions and perform all the other duties of his office each biennium. Terrell, Comptroller, v. King, 118 Texas, 237, 14 S. W. (2d) 786; Spears v. Sheppard, Comptroller, 136 Texas, 277, 150 S. W. (2d) 769. We think that indicates that the Constitution never intended that sessions of the Senate such as that under review should or could be held. Since travel was slow, uncertain and otherwise difficult in 1875 and before, it is not reasonable to suppose that it was expected that members of the Senate, with many of them living in distant parts of the state, could be required to attend without pay one or many "solo" sessions of that body each biennium to pass on appointments to office. Had such service been expected compensation therefor undoubtedly would have been provided.

■  We are well conviced that the power here asserted does not exist, but if we entertained any doubt we would still have to resolve it against relator's contention. "When all the legitimate lights for ascertaining the meaning of the Constitution have been made use of, it may still happen that the construction remains a matter of doubt. In such a case it seems clear that every one called upon to act where, in his opinion, the proposed action would be of doubtful constitutionality, is bound upon the doubt alone to abstain from acting." Cooley's Constitutional Limitations (8th Ed.), Vol. 1, p. 153. That principle applies both to the Senate and to this court.

■  Nothing we have said in this opinion has reference to the power of either the Senate or the House with respect to impeachment, since no question in that field is before us. Neither confirmation nor impeachment is a legislative function; but there analogy ends. Impeachment is a judicial function of government which is expressly vested by Art. XV of the Constitution in the two Houses of the Legislature, with the office of each in its performance distinctly prescribed. Sec. 7 of that article also directs that the "Legislatiure shall provide by law for the trial and removal from office of all officers of this State, the modes for which have not been provided in this Constitution." That provision the Legislature sought to make by Art. 5961 et seq., R. S. 1925, Acts 3rd C. S. 1917, p. 102, which prescribes, among other things, a method by which the two houses may convene themselves to perform the function of impeachment; but we are not called upon to construe any part of that

enactment. We observe in that connection that the decision of this court in Ferguson v. Maddox, 114 Texas 85, 263 S. W., 888, is in·no sense determinative of the issue here involved. In that case the Legislature was in special session at the call of the Governor and impeachment of the Governor was not stated in his proclamation as one of the purposes of the session. The House voted article of impeachment against the Governor, and the Senate began a trial on those articles but had not completed it when the special session expired. Thereupon the acting Governor· called another special session to begin immediately in order that the Senate could conclude the trial. Consequently the power of the Legislature to consider the impeachment of the Governor at a special session when that subject had not been submitted by him and the power of the Senate to conclude the trial at a special session of the *Legislature* immediately following and duly called were the questions before the court. The power of the Senate to convene itself even to try an impeachment of the Governor was not an issue in that case. Likewise, People ex rel. Robin v. Hayes, 143 N. Y. S., 325, cited by relator, is concerned with impeachment of the Governor and is not in point here.

Construing the applicable constitutional provisions together, we have decided that they furnish no warrant for the Senate to convene of its own motion to pass on the Governor's appointments. We hold, therefore, that the Senate session involved in this case was void.

Relator's prayer for the writ of mandamus is refused.

Opinion delivered July 17, 1946.

Rehearing overruled August 30, 1946.

Mr. CHIEF JUSTICE ALEXANDER, dissenting.

I cannot subscribe to the decision expressed in the majority opinion. My views are as follows:

The sole question to be determined is whether or not the Senate of the State of Texas was authorized to meet at a time when the Legislature was not in session, for the purpose of passing upon recess appointments previously made by the Governor of the State.

Our Constitution reads in part as follows:

"All vacancies in State or district offices, except members of the Legislature, shall be filled unless otherwise provided by law, by appointment of the Governor, which appointment, if made during its session, shall be with the advice and consent of two-thirds of the Senate present. If made during the recess of the *Senate,* the said appointee, or some other person to fill such vacancy, shall be nominated *to the Senate* during the first ten days of *its session.* If rejected, said office shall immediately become vacant, and the Governor shall, without delay, make further nominations, until a confirmation takes place. But should there be no confirmation during *the session of the Senate,* the Governor shall not thereafter appoint any person to fill such vacancy who has been rejected by the Senate; but may appoint some other person to fill the vacancy until *the next session of the Senate or until the* regular election of said office, should it sooner occur. Appointments to vacancies in offices elective by the people shall only continue until the first general election thereafter." Sec. 12, Art. IV, Constitution of the State of Texas. (Italics mine.)

The above constitutional provision confers upon the Senate the authority and imposes upon it the responsibility of passing upon and either confirming or rejecting the appointments to State and district offices as made by the Governor. This is a very important provision of our Constitution. The framers of our Constitution undertook to so write our organic law that no member of any of the departments should have or exercise tyrannical or unlimited powers. Hence many checks and balances, such as here under consideration, were placed in the Constitution. Reciprocal checks of this kind by one department of our government upon another constitute fundamental safeguards of our republican form of government. This particular provision was inserted to prevent those who might fill the executive office from imposing untrustworthy officials upon the people. Alexander Hamilton, discussing, in *The Federalist,* a similar provision found in our National Constitution, said:

"To what purpose, then, require the cooperation of the Senate? I answer that the necessity of their concurrence would have a powerful, though in general a silent, operation. It would be an excellent check upon a spirit of favoritism in the President, and would tend greatly to preventing the appointment of unfit characters from State prejudice, from family connection, from personal attachment, or from a view to popularity. In addition to

this, it would be an efficacious source of stability in the administration." *The Federalist,* No. LXXV. (Colonial Press, Revised Edition, 1901, p. 420).

Confirmation of appointments made by the Governor is one of the important functions to be performed by the Senate. The Constitution contains no limitation upon the power of the Senate to perform this important function, except that the nomination shall be made "to the Senate during the first ten days of its session." Very clearly, nominations are to be made to the *next session* of the *Senate* after the appointments have been made. Certainly the provisions of the Constitution above referred to contains no limitation as to *when* the Senate may meet for this purpose. Since the people placed this important responsibility upon the Senate for the protection of the public and fixed no limitation as to when it may meet for the purpose of performing this function, the only reasonable conclusion to be drawn is that the people intended that the Senate should exercise its own discretion as to when it should meet for the purpose of passing upon such appointments.

It is a principle of law, well recognized, that "The Constitution is not to be given a technical construction, but must be construed in an equitable manner so as to carry out the great principles of the government. Black on Interpretation of Laws, p. 13; Nolan v. San Antonio Ranch Co., 81 Texas. 315, 317, 16 S. W. 1064." Great Southern Life Insurance Co. v. City of Austin, 112 Texas 1, 9, 243 S. W. 778. See also 12 C. J. 700, 701. It is also true that when action with respect to a particular matter is confided to the discretion of one of the departments of government, the decision arrived at or action taken may not be reviewed or revised. Terrell v. Middleton, 187 S. W. 367 (writ refused 108 Texas 14, 191 S. W. 1138, reh. den. 108 Texas 14, 193 S. W. 139) ; 9 Tex. Jur. 443.

The Senate constitutes an integral part of one of the three great branches of our government. Its members are the chosen representatives of the people. They are required to go before the public at frequent and regular intervals for the purpose of renewing their authority to represent the people. They are therefore fresh from the people and represent the will of the people. If they abuse the discretion vested in them by meeting at improper or too frequent intervals for the purpose of passing upon recess appointments, the people will withdraw their authority and select others in their stead. So long as they are the

chosen representatives of the people the courts have no right to dictate to them as to how or *when* they may exercise such an important function of government.

It is argued in the majority opinion that the Constitution fixes the time when the Senate may meet, and therefore this is exclusive. But is this true? Article III, Section 5, does provide: "The Legislature shall meet every two years, at such time as may be provided by law, and at other times when convened by the Governor.'* * *'" But this provision relates to the time when the "Legislature," and not the Senate, may meet. Hence we must look to the provisions of Section 1 of Article III to ascertain what is meant by the term "Legislature." That section reads as follows: "The Legislative power of this State shall be vested in a Senate and House of Representatives, which together shall be styled 'The Legislature of the State of Texas.' " Both Houses, when meeting together for legislative purposes, constitute the "Legislature," and it is this "Legislature" which may meet only every two years and at such times as it may be convened by the Governor. Ferguson v. Maddox, 114 Texas 85, 263 S. W. 888. But as said by this Court in the above case, "the sole function of the House and Senate is not to compose the 'Legislature' and to act together in the making of laws." Each in the plainest language is given separate plenary power and jurisdiction to perform functions of government other than that of legislating. The Senate is given, among others, the power of confirmation of appointments by the Governor of public officers. Confirmation or rejection by the Senate of the Governor's appointments is not a legislative function. It is an executive function expressly delegated to the Senate alone. Denison v. State (Civ. App.), 61 S. W. (2d) 1017, 1021 (writ refused 122 Texas 459, 61 S. W. (2d) 1022); State v. Williams (Mo. Sup. Ct.), 124 S. W. 64; State ex rel. Saint v. Dowling (La. Sup. Ct.), 120 So. 593; People v. Blanding, 63 Cal. 333; Ferguson v. Maddox, supra. The authority to exercise this function is conferred by Article IV, Section 12 of the Constitution, which article deals exclusively with the executive functions. It is separate and apart from the provisions of the Constitution conferring legislative powers upon the Legislature as found in Article III of the Constitution. Hence the limitation upon the power of the "Legislature" to meet for legislative purposes, as contained in Article III, Section 5, has nothing to do with the right of the Senate to meet at other times for the purpose of exercising the executive functions conferred upon it by Article IV, Section 12. Ferguson v. Maddox, supra. The broad power of the Senate to pass upon

appointments by the Governor stands without limit or qualification as to the time of its exercise. The right of the Senate to pass upon such appointments exists at all times, and it lies within the discretion of the Senate, and not the courts, to determine *when* it shall perform that function.

My views in this respect are in line with the prior holdings of this Court. The Constitution confers upon the House and the Senate other powers that are not legislative in their nature. It confers upon the House the power to prefer impeachment charges and upon the Senate the power to "try" those charges. In the case of Ferguson v. Maddox, 114 Texas 85, 262 S. W. 888, this Court in passing upon the power of the House and the Senate to meet for the purpose of performing these extra-legislative functions said:

"From this review it is seen that the Constitution creates a House of Representatives and a Senate, each separate and distince from the other; that these two bodies, or houses, together constitute 'the Legislature'; and that upon this Legislature is conferred all legislative power.

"*But the sole function of the House and Senate is not to compose 'the Legislature,' and to act together in the making of laws. Each, in the plainest language, is given separate plenary power and jurisdiction in relation to matters of impeachment*s The House the power to 'impeach,' that is, to prefer charges; the Senate the power to 'try' those charges. These powers are essentially judicial in their nature. *Their proper exercise does not, in the remotest degree, involve any legislative function.*

\* \* \* \* \*

"*The powers of the House and Senate in relation to impeachment exist at all times.* They may exercise these powers during a regular session. No one would question this. Without doubt, they may exercise them during a special session, unless the Constitution itself forbids. It is insisted that such inhibition is contained in article 3, sec. 40, which provides that legislation at a special session shall be confined to the subjects mentioned in the proclamation of the Governor convening it. This language is significant and plain. It purposely and wisely imposes no limitation, save as to legislation. *As neither House acts in a legislative capacity in matters of impeachment, this section imposes no limitation with relation thereto, and the broad power conferred by article 15 stands without limit or qualification as to the time of its exercise.*

\* \* \* \* \*

"From the inception to the conclusion of impeachment pro-
ceedings the House and Senate, as to that matter, are not limited
or restricted by legislative sessions. As has been shown, their
constitutional powers with regard to impeachment are not legis-
lative and are not affected by article 3, sec. 40. Each House is
empowered by the Constitution to exercise certain functions
with reference to the subject-matter; and as they have not been
limited as to time or restricted to one or more legislative ses-
sions, they must necessarily proceed in the exercise of their
powers without regard thereto. At the end of a legislative ses-
sion the House does not cease to exist, and its power, so far as
its proper participation in a pending impeachment proceeding
is concerned, is not affected, or the effect of what it has already
properly done impaired. When the House presented the impeach-
ment charges to the Senate, a major part of its constitutional
duty was done, though, in accordance with established parlia-
mentary practice, it must still, through its managers, in the
role of prosecutor, conduct the trial in the Senate. But the ex-
piration of the legislative session before the indictment preferred
by it could be fully tried, did not impair the effect of the indict-
ment or make it necessary for the House to proceed anew and
return another. The Constitution does not require this. It is not
a reasonable implication from any of its provisions, and to so
hold would be illogical and contrary to pertinent precedents and
analogies. Articles of impeachment, when preferred by the
House, stand for trial before the Senate as a constitutional
court, created and organized for such purpose, and whether that
trial is concluded at the then legislative session or at some sub-
sequent one is wholly immaterial.

"And the same reasoning applies to the Senate. When the
House prefers charges, the Senate, under the mandate of the
Constitution, resolves itself into a court for the trial of the
charges, and it may and must continue this trial until the mat-
ter is disposed of by final judgment. Like the House, it does not
cease to exist at the expiration of the legislative session. It is
a court and continues such regardless of legislative sessions.
The fact that the impeachment trial may extend from one legis-
lative session into another and covers parts of both is not ma-
terial. The Constitution creates the court; it does not prescribe
for it any particular tenure, or limit the time of its existence.
By indubitable reason and logic it must have power and au-
thority to sit until the full and complete accomplishment of the
purpose for which it was created, limited, perhaps, by the
tenure of office of the persons composing it." (Italics mine.)

In the above case, in the clearest language possible, this Court held that the House in preferring impeachment charges and the Senate in conducting trials under such charges were not performing legislative functions, and therefore were not limited as to time for the performance of these functions in any respect by other provisions of the Constitution. The Court held that "The powers of the House and Senate in relation to impeachment *exist at all times.*" (Italics mine.) It further held that "As neither House acts in a legislative capacity in matters of impeachment, this section (Art. III, Sec. 40) imposes no limitation with relation thereto, and the broad power conferred by Article XV stands without limit or qualification as to the time of its exercise." It is equally true that the Senate in passing upon appointments made by the Governor is not performing a legislative function, and therefore its power to perform this function "exists at all times" and is not limited by the provisions of Article III, Sec. 5, relating to the time when the Legislature may meet for legislative purposes. As I understand, the majority opinion concedes that the Senate performs a nonlegislative function when it passes upon appointments made by the Governor. If so, and if as held by this Court in Ferguson v. Maddox, supra, the right of the Senate to meet for the purpose of performing the non-legislative function of conducting an impeachment trial "exists at all times," then why is it that the right of the Senate to meet for the purpose of performing another non-legislative function—confirming appointments made by the Governor—does not "exist at all times"? The majority opinion gives no reason for such a distinction. Obviously there is none. This case cannot be decided as it is in the majority opinion without running counter to the holding made by this Court in Ferguson v. Maddox, supra.

The majority opinion places a strict construction upon our Constitution and impliedly holds that since the Constitution does not expressly authorize the Senate to meet in separate session for the purpose of confirming appointments by the Governor, we should resolve the doubt against such a construction. Such a construction may be applicable to the Federal Constitution, but certainly it is not applicable to a situation such as we have here under a State Constitution. On the contrary, since the Constitution expressly authorizes the Senate to act on such appointments at its next session, and contains no limitation as to when the Senate may meet for this purpose, we should resolve the doubt in favor of the right to freely exercise the authority so granted. It must be remembered that the Constitution of the

United States is distinguishable from a State Constitution in that the former is primarily a grant of power, whereas the State Constitution is not a grant but is a limitation of power. Therefore a State Constitution should be more liberally construed in favor of the authority of the Senate to act. 16 C. J. S. 124; 9 Tex. Jur. 444; 11 Amer. Jur. 619; Cooley's Constitutional Limitations, 8th Ed., Vol. 1, p. 354; Charles Scribner's Sons v. Marrs, 114 Texas 11, 262 S. W. 722. "The distinguishing characteristic differs between the federal and state constitutions is that the constitution of the United States is but a grant of legislative power, and the Congress can, in framing laws, only exercise such authority as is granted, whilst, on the other hand, state constitutions are only limitations upon the complete power with which, otherwise, the legislative department of the state was vested in its creation." 9 Tex. Jur., sec. 30, p. 445; Longmire v. State, 75 Crim. Rep. 616, 623, Ann. Cas. 1917C, 726, 171 S. W. 1165. "Under our form of government, the State Constitution is an instrument of limitations, and the Federal Constitution is an instrument of delegations; that is to say, the State Legislature can do anything not prohibited by the Federal or State Constitutions, and Congress cannot do anything not authorized in its delegated power, to wit, the Federal Constitution." 9 Tex. Jur., p. 445, note 19; Ex parte Hart, 41 Crim. Rep. 581, 588, 56 S. W. 341.

"We must take and apply the plain language of the Constitution as we find it and cannot add to it so as to restrict the powers of the Legislature further than such language restricts it, in order to prevent a fancied mischief." Lindsey v. State of Texas, 96 Texas, 586, 588, 74 S. W. 750, 751.

"It is an established rule of construction that, where a constitution confers a power or enjoins a duty, it also confers, by implication, all powers that are necessary for the exercise of the one or for the performance of the other." And "every positive direction in a constitution contains an implication against anything contrary to it, or which would frustrate or disappoint the purpose of that provision." 12 C. J., sec. 73, p. 719.

"Where the power is granted in general terms, as the jurisdiction of this court has been, the power is to be construed as co-extensive with the terms, unless some clear restriction upon it is deducible from the context." Morton v. Gordon, Dallam Decisions, 396 399.

Our Constitution plainly confers upon the Senate the authority to pass upon appointments made by the Governor, and

it contains no limitation as to when the Senate may exercise this authority. Under the authorities above cited it is our duty to construe this provision liberally for the protection of the people and to allow the Senate to exercise its own discretion in performing the obligations there imposed, unless the Constitution expressly or by necessar implication provides otherwise. The fact that the Constitution provides that the *Legislature* may meet for *legislative purposes* only at certain intervals is by no means a limitation upon the authority of the *Senate* to meet at other times for the purpose of performing a *non-legislative function.*

In this connection, the difference between the language of the Constitution of 1869 and the present Constitution is significant. Article IV of the Constitution of 1869 contained the following provision:

"Sec. 7. * * * If a vacancy occurs in any of the executive offices, by death, resignation, or removal, or from any other cause, during the recess of the Legislature, the Governor shall have power, by appointment, to fill such vacancy; *which appointment shall continue in force till the succeeding session of the Legislature,* when he shall communicate such appointment *to the Senate for confirmation, or rejection.* * * *"

"Sec. 12. Nominations to fill vacancies occurring in the *recess of the Legislature,* shall be made by the Governor during *the first ten days of its session;* and should any such nomination be rejected, the same person shall not again be nominated, during the session, to fill the same office." (Italics mine.)

It will be noticed that under that Constitution recess appointments made by the Governor were to continue, not until the next session of the Senate as now provided, but until the next session of the *Legislature;* and while the Senate alone could confirm or reject the appointment, the Governor was not required to communicate the appointment to the Senate until *"the first ten days of its* (the Legislature's) *session."* In other words, the Legislature, as such, including both the Senate and the House, had to be in session for legislative purposes before the Governor was required to communicate the appointment to the Senate. But apparently the people were dissatisfied with the provisions of the Constitution of 1869 in this respect, and well may have been, for under other provisions, as under the present Constitution, the "Legislature" could meet only every two years and at such other times as suited the convenience of the Governor under the provisions of that Constitution the. Governor

could make an appointment immediately after the Legislature had adjourned, and the appointee could serve out most, if not all, of his term before the Legislature could convene again, and in this way the Governor could impose unworthy appointees upon the public. By refusing to call a special session of the Legislature he could defeat the right of the people to have the Senate meet and pass upon recess appointments. This defect doubtless prompted the people to change their Constitution in 1875 so as to provide, as it now provides, that if such appointments are "made during the recess of the *Senate* (not the Legislature), the said appointee or some other person to fill such vacancy shall be nominated to the *Senate* during the first ten days of *its session.*" (Italics mine.) No limitation was fixed as to when a session of the Senate could be held for this purpose. In this way the people took it out of the power of the Governor to thwart the right of the people to have the Senate act promptly on recess appointments. This was an important change made in the organic law of the State. Why did the people make this important change in the basic law of the land if it was not intended thereby to permit the Senate to meet for this purpose at a time when the Legislature was not in session? Undoubtedly we must ascribe to the people some reasons for making this vital change, and no other reason is apparent. The majority opinion gives no importance whatever to this change, but treats the present Constitution as though it contained the same language as the old Constitution.

The fact that this power of the Senate to meet in separate session when the Legislature is not in session has not been invoked since its authorization in 1875 is to some extent indicative of the fact that the Senate has not heretofore construed the Constitution as conferring such power. But this is not conclusive. The construction of the Constitution is the peculiar province of the courts and to them belongs the final decision. A practical construction of a plain constitutional provision may not be allowed to disturb or in any way change its natural meaning. 12 C. J. 176. Nonuser alone may not be invoked to defeat the power to exercise rights plainly conferred by the Constitution. For example: The power to impeach a Governor has been in our Constitution since the existence of the State, but its provisions were not invoked until 1917. Ferguson v. Maddox, supra. Yet no one contended at that time that the right to impeach a Governor had been lost by nonuser. Again, the provision making ineligible for the Legislature any one who holds a lucrative office under this State has been in the Constitution since 1875.

Article III, sec. 19. Apparently its provisions were never invoked until 1944. Burroughs v. Lyles, 142 Texas, 704, 181 S. W. (2d) 570. Yet no one came forward at that time to insist that the effectiveness of that provision had been lost by nonuser. Many other examples could be given. The very fact that the Senate has at all times had the power to meet at will for the purpose of passing upon the recess appointments of the Governor may have served as a silent deterrent against abuse of the appointive power by the Governor and thus rendered it unnecessary for the Senate to exercise such powers.

The fact that the Senators cannot collect per diem pay while attending such a special session of the Senate is not material. Senators are required to perform services upon many interim committees without such compensation. The compensation provided for in Article III, Section 24, of the Constitution covers and includes the services which may be required of a member during his entire term of office, including the time served by him on committees or otherwise between sessions of the Legislature. Spears v. Sheppard, 136 Texas 277, 150 S. W. (2d) 769. Therefore the Senators are fully paid for their services while attending such a special session of the Senate.

It is not within the province of this Court to decide whether there was any necessity for the Senate to meet when it did nor to pass upon the suitability of the Governor's appointees. The Constitution vests the decision of these questions exclusively in the sound discretion of the Senate. We are merely called on here to construe the Constitution as it is written. Obviously, whatever construction we place upon that document now will control in the predictable future. If the rule announced in the majority opinion stands, then we have forever closed the door and barred the right of the people to have the Senate meet in extra session for the purpose of passing upon recess appointments by future Governors, regardless of how improvident, unwise, or unsuitable theappointments may be. In my opinion the majority holding takes away from the Senate the discretion plainly vested in it by the Constitution to determine when it may meet for the purpose of passing upon recess appointments.

Associate Justices Sharp, Simpson, and Taylor concurring.

Opinion delivered July 17, 1946.