April 13, 2009

The Honorable Don McLeroy
Chair, State Board of Education
1701 North Congress Avenue
Austin, Texas 78701-1494

Opinion No. GA-0707

Re: Calculation of the "total return on all investment assets of the permanent school fund" for purposes of article VII, subsection 5(a)(2), Texas Constitution (RQ-0758-GA)

Dear Mr. McLeroy:

Article VII, section 5 of the Texas Constitution authorizes the State Board of Education ("SBOE") to determine the amount to be distributed from the permanent school fund ("PSF") to the available school fund ("ASF") each year of a fiscal biennium.[1] *See* TEX. CONST. art. VII, § 5(a). Your request focuses on two constraints in article VII, section 5 affecting the amount that may be distributed.[2] First, subsection 5(a)(1) limits the distribution made in each year to not more than "six percent of the average of the market value of the [PSF] . . . on the last day of each of the 16 state fiscal quarters preceding the regular session of the legislature that begins before that state fiscal biennium." *Id.* art. VII, § 5(a)(1). Second, under subsection 5(a)(2), the total amount distributed "over the 10-year period consisting of the current state fiscal year and the nine preceding state fiscal years may not exceed the total return on all investment assets of the permanent school fund over the same 10-year period." *Id.* art. VII, § 5(a)(2).

You explain that, due to "the recent dramatic declines in the financial markets," any proposed distribution "from the PSF to the ASF could exceed the total return on all investments of the PSF over the relevant 10-year period." Request Letter at 2. You therefore ask a number of questions concerning the proper application of subsections 5(a)(1) and 5(a)(2) as they relate to the SBOE's distribution of funds from the PSF to the ASF. *See id.* at 2–4; Supp. Req. at 1–2.

---

[1]If the SBOE does not adopt a distribution rate as authorized in article VII, subsection 5(a), the constitution allows the Legislature to do so by general law or appropriation. TEX. CONST. art VII, § 5(a)(1)(B).

[2]Request Letter at 1–3 (*available at* http://www.texasattorneygeneral.gov). Subsequent to your initial request, you also submitted a supplemental request on January 14, 2009, which we will refer to as "Supp. Req."

Your first and second questions ask us to confirm the appropriateness of the current methodology used by the SBOE to calculate the "total return on all investment assets of the [PSF]," including whether "total return should be reduced" by investment management fees or total administrative expenses. Request Letter at 2.[3] Specifically, you inquire about the meaning of the terms "investment assets" and "total return." *Id.* The terms "investment assets" and "total return" are not defined in article VII, section 5. *See* TEX. CONST. art. VII, § 5. However, this office, like the SBOE, has concluded that "investment assets" as discussed in article VII, section 5 are "the assets subject to the investment control and management of the Board," which excludes the PSF land and proceeds from that land that are managed by the School Land Board and the Commissioner of the General Land Office. Tex. Att'y Gen. Op. No. GA-0516 (2007) at 4–5; *see also* Request Letter at 2 n.4. We therefore focus on your questions as they relate to "total return."

The constitution charges the SBOE with "managing the assets of the [PSF]" and tasks the SBOE with the responsibility to determine the amounts to be distributed from the PSF to the ASF. *See* TEX. CONST. art. VII, § 5(a), (f); Tex. Att'y Gen. Op. No. GA-0293 (2005) at 1–2. In "managing the assets of the [PSF], the [SBOE] may . . . supervise, manage or retain, through procedures and subject to restrictions it establishes and in amounts it considers appropriate, any kind of investment" that a prudent person under the prevailing circumstances would acquire or attain. TEX. CONST. art. VII, § 5(f). The general authority and responsibility given to the SBOE under subsection 5(f) encompasses the duty to determine the appropriate methodology for calculating the total return on those assets. *See id.* art. VII, § 5(f). As the agency so charged, the SBOE must, in the first instance, determine the appropriate methodology, consistent with its fiduciary obligations and industry standards, to calculate the total return on all investment assets of the PSF. *See* Tex. Att'y Gen. Op. No. JC-0449 (2002) at 1, 7 (requiring Lottery Commission, as agency charged with application and enforcement of the law, to determine whether "gambling device" includes video poker games); Supp. Req. at 2 (stating that the SBOE acts as a fiduciary over the PSF). The courts will generally defer to a reasonable construction by the administrative agency charged with the application of a law. *See Osterberg v. Peca*, 12 S.W.3d 31, 51 (Tex. 2000) (stating that "[a] reasonable construction of a statute by the administrative agency charged with its enforcement is entitled to great weight" and affirming the Texas Ethics Commission's definition of "direct campaign expenditure").

You explain that the SBOE has "calculated 'total return' of the investment assets as the net appreciation or decline in value, plus income." Request Letter at 2. You also note that the SBOE does not include "investment management fees" or "total administration expenses" in the calculation of total return. *Id.* at 2–3. Article VII, section 5 does not define "total return," nor do we find any applicable Texas statutes or administrative regulations that define the term.[4] Although the

---

[3]Article VII, subsection 5(b) requires that the "expenses of managing [the PSF] land and investments shall be paid by appropriation from the [PSF]." TEX. CONST. art. VII, § 5(b). However, the provision does not specify whether those expenses are to be deducted before or after calculating the total return. *See id.*

[4]Other Texas statutes similarly use the phrase "total return" without defining it. *See, e.g.,* TEX. EDUC. CODE ANN. § 62.026(d) (Vernon 2006) (directing the Comptroller to invest the Higher Education Fund "in a manner that maximizes the total return"); TEX. FIN. CODE ANN. § 184.101(e)(3)(F) (Vernon 2006) (requiring a state trust company

Legislative Council did not provide a clear definition, in explaining the proposed constitutional amendment to article VII, section 5, it stated that the amendment "would change the composition of the PSF and the ASF by providing that the ASF . . . would consist of a portion of the 'total return' on investment assets of the PSF—in other words, a portion of the market value increases, or capital gains, of stocks and bonds held by the PSF." TEXAS LEGISLATIVE COUNCIL, ANALYSES OF PROPOSED CONSTITUTIONAL AMENDMENTS, Sept. 13, 2003, at 58. Thus, the Legislative Council similarly understood total return to include income plus the increased value of assets. Courts will give "great weight" to a contemporaneous construction given by the Legislature. *Walker v. Baker*, 196 S.W.2d 324, 327 (Tex. 1946). Furthermore, within the investment industry, "total return" is commonly defined as the "annual return on an investment including appreciation and dividends or interest." JOHN DOWNES AND JORDAN ELLIOT GOODMAN, DICTIONARY OF FINANCE AND INVESTMENT TERMS 654 (5th ed. 1998). Based on the industry definition and the Legislative Council's description of the term "total return," we believe a court would likely conclude that the SBOE's construction of total return is reasonable.

You next ask when the limit expressed in subsection 5(a)(2) should be applied to a transfer from the PSF to the ASF. Request Letter at 3. Subsection 5(a)(2) states that "[t]he total amount distributed from the [PSF] to the [ASF] . . . over the 10-year period consisting of the current state fiscal year and the nine preceding state fiscal years may not exceed the total return on all investment assets of the [PSF] over the same 10-year period." TEX. CONST. art. VII, § 5(a)(2). You suggest that the subsection 5(a)(2) test could be applied in at least three points in time: (1) monthly, when the Texas Comptroller of Public Accounts makes a transfer from the PSF to the ASF; (2) at the end of each fiscal year; or (3) before each state fiscal biennium. *See* Request Letter at 3. You do not suggest which, if any, of these alternatives you believe to be legally appropriate.[5]

The language of subsection 5(a) and the statutory provisions implementing that constitutional provision speak to and limit distributions from the PSF to the ASF in each state fiscal year. *See* TEX. CONST. art. VII, § 5. Subsection 5(a) provides that the amount distributed in each year of a state fiscal biennium over the ten-year period consisting of the current state fiscal year and the nine preceding state fiscal years may not exceed the total return on all investment assets of the PSF over the same ten-year period. *Id.* art. VII, § 5(a). Consistently, the Legislature has directed the Comptroller, "[o]n the first working day of each month in a state fiscal year, . . . [to] transfer from the [PSF] to the [ASF] an amount equal to one-twelfth of the *annual distribution*[.]" TEX. EDUC.

---

to consider "the expected total return of the portfolio" in making investment decisions). The Comptroller has suggested that "total return" is defined as the "annual return on an investment including appreciation and dividends or interest." E-TEXAS 2001, *Recommendations from the Texas Comptroller* (available at http://www.window.state.tx.us /etexas2001/recommend/ch06/ed02.html).

[5]The Office of the Attorney General did not receive briefing from the SBOE or any other interested parties with respect to the Request or Supplemental Request. Based on our conversations with David Anderson, General Counsel for the SBOE, we understand that the "total return on all investment assets of the [PSF] over the same ten-year period" has been calculated utilizing the fiscal year-end values for the preceding nine fiscal years and a projected year-end value for the current fiscal year. TEX. CONST. art. VII, § 5(a)(2).

CODE ANN. § 43.002(a) (Vernon 2006) (emphasis added). Thus, under the language of subsection 5(a)(2) and the statutes implementing it, the amount distributed during the current state fiscal year and the nine preceding state fiscal years must be compared against the total return on all investment assets of the PSF over that same ten-year period, an amount that includes the return for the current fiscal year. *See* TEX. CONST. art. VII, § 5(a)(2). The Legislature's consistent focus on and discussion of annual distributions from the PSF to the ASF demonstrate that the limitation in article VII, subsection 5(a)(2) should be applied on an annual basis to determine whether the scheduled annual distribution will comply with the constitutional requirement.

You also ask what actions are necessary if, after final or audited numbers become available, it is determined that a transfer of funds from the PSF to the ASF exceeded the limits of subsection 5(a)(2) for a fiscal year. Request Letter at 3. You explain that "[a] determination of the total return of the PSF cannot be made on a monthly basis sooner than roughly the end of the following month and annual audited figures are not available until several months following the end of the state fiscal year." *Id.* Thus, although the SBOE may have estimates of the total return on the PSF when it is required to make its distribution decision, it is possible that the annual distribution decided by the SBOE may exceed the subsection 5(a)(2) limit when the audited figures for the return from the fiscal year become available. *See id.* If the annual distribution exceeds the amount allowed under subsection 5(a)(2), you ask whether repayment from the ASF to the PSF is required and whether such repayments could be made in a subsequent fiscal year. *See id.* Neither article VII, section 5 nor the statutory provisions relating to it address the situation of an overpayment as you describe. Given the complete silence on the issue and without further instruction from the Legislature, we will not speculate about what remedies, if any, are required in such a situation or when any remedial action must be taken.

Your final question asks whether "the SBOE may adopt a percentage distribution [under subsection 5(a)(1)] even if subsection 5(a)(2) would preclude all or part of that distribution." *Id.* at 4. Subsection 5(a)(1) directs the SBOE, or the Legislature if the SBOE does not act, to determine an amount to be distributed from the PSF to the ASF based on the "average of the market value of the [PSF] . . . on the last day of each of the 16 state fiscal quarters preceding the regular session of the legislature that begins before that state fiscal biennium."[6] TEX. CONST. art. VII, § 5(a)(1). Independent of that calculation, subsection 5(a)(2) mandates that the "total amount distributed from the [PSF] to the [ASF] . . . over the 10-year period consisting of the current state fiscal year and the nine preceding state fiscal years may not exceed the total return on all investment assets of the [PSF] over the same 10-year period." *Id.* art. VII, § 5(a)(2). Each of these provisions by its terms requires an independent calculation using a different methodology and covering a different time period. As a result, subsection 5(a)(2) does not prohibit the SBOE from adopting a percentage under subsection

---

[6]The current state fiscal year began September 1, 2008 and will end August 31, 2009. The eighty-first legislative session convened on January 13, 2009. Therefore, in determining a percentage under subsection 5(a)(1), the SBOE considers the average market value of the PSF on November 30, 2008 and the fifteen preceding quarter-end values of the PSF. *See* TEX. CONST. art. VII, § 5(a)(1). Any amount distributed by the SBOE in each year of the next state fiscal biennium cannot exceed six percent of the average of those sixteen values. *Id.*

5(a)(1). However, subsection 5(a)(2) would operate to prevent a distribution from the PSF to the ASF if a distribution would violate the limitation contained in subsection 5(a)(2). Further, the determination of the amount to be distributed from the PSF to the ASF is part of the SBOE's management responsibilities under article VII, subsection 5(f). *See id.* art. VII, § 5(f). As such, the SBOE must consider its fiduciary obligations in setting the distribution rate under subsection 5(a)(1).

Your supplemental request, received on January 14, 2009, asks "whether the Board, acting in its fiduciary role over the PSF," is authorized to determine that the "limit in Article VII, Section 5(a)(2) has been reached." Supp. Req. at 2. Unlike subsection 5(a)(1), which expressly directs the SBOE to calculate the market value of the PSF for the preceding sixteen quarters and adopt a distribution percentage based on that calculation, subsection 5(a)(2) is silent as to the entity charged with applying the limits therein required. *See* TEX. CONST. art. VII, § 5(a). Aside from the SBOE, or the Legislature if the SBOE does not act, "[t]he constitution does not authorize any other state officer or governmental body to compute the rate required by section 5 or to distribute funds from the PSF to the ASF." Tex. Att'y Gen. Op. No. GA-0617 (2008) at 8. As the agency tasked with "managing the assets of the [PSF]," it is the duty of the SBOE to determine the "total return" of the PSF absent express authority by another entity to make that determination. Having found no legal authority giving that duty to another agency, it is presumed that the SBOE must fulfill that duty in the first instance. Thus, based on the guiding principles of the constitutional provision, we conclude that the SBOE, as the entity charged with ensuring the perpetual existence of the PSF, would reasonably appear to be the entity authorized to apply the limits of subsection 5(a)(2) to the amount it distributes from the PSF to the ASF.

In your supplemental request you explain that the SBOE met in January 2009 and affirmed the 2.5% rate previously decided upon, while also adopting a contingency plan. Supp. Req. at 1 n.2. You explain this contingency plan as providing that "should any payments during the biennium not be made because of the limitation in Article VII, Section 5(a)(2), and should sufficient total return later become available, subsequent payments during the biennium would be increased to make up the shortfall." *Id.* at 1. Your supplemental request asks whether "the [SBOE] may adopt such a contingency and appropriately transfer funds from the PSF to the ASF under those circumstances." *Id.*

Under the plain language of subsection 5(a), any amount that the SBOE decides to distribute for each year of the upcoming fiscal biennium cannot exceed the limitations within that provision. *See* TEX. CONST. art. VII, § 5(a). While the constitution and the statutory provisions enacting it do not expressly require that the amount the SBOE decides to distribute be the same for each fiscal year of the biennium, they only provide for annual distributions. Thus, the only time at which a contingency rate could be used to alter the distribution and correct a shortfall would be annually, when the subsection 5(a)(2) limitation is applied. So long as the SBOE contingency plan complied with this annual approach, and so long as the amounts distributed each fiscal year would not exceed six percent of the average market value of the PSF as provided in subsection 5(a)(1) and the subsection 5(a)(2) limitations, we conclude that nothing in article VII, section 5 prohibits the SBOE from adopting such a contingency plan.

## S U M M A R Y

As the agency charged with determining the amount to be distributed from the permanent school fund ("PSF") to the available school fund ("ASF"), the State Board of Education must establish the appropriate methodology for calculating the total return on all investment assets of the PSF in the first instance.

The limitation in article VII, subsection 5(a)(2) of the Texas Constitution must be applied on an annual basis to determine whether the annual distribution for a given fiscal year complies with the requirements therein established.

Distributions made from the PSF to the ASF must comply with both subsection 5(a)(1) and subsection 5(a)(2). The constitutional provisions and related statutes are silent as to any remedies required for an overpayment under either provision.

The calculations in subsections 5(a)(1) and 5(a)(2) are independent. The plain language of subsection 5(a)(2) does not prevent the SBOE from adopting a rate under subsection 5(a)(1). A distribution authorized under subsection 5(a)(1) must also satisfy subsection 5(a)(2).

The SBOE, as the entity charged with ensuring the perpetual existence of the PSF, is authorized to apply the limits of subsection 5(a)(2) to the amount it distributes from the PSF to the ASF.

Nothing in article VII, section 5 prohibits the SBOE from adopting a contingency plan for distributing the funds under article VII, section 5 provided the amounts distributed during each fiscal year do not exceed six percent of the average market value of the PSF as provided in subsection 5(a)(1) and the subsection 5(a)(2) limitations.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

ANDREW WEBER
First Assistant Attorney General

JONATHAN K. FRELS
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Virginia K. Hoelscher
Assistant Attorney General, Opinion Committee