# Supreme Court of Texas

No. 22-0008

Greg Abbott, in His Official Capacity as Governor of the
State of Texas; John Scott, in His Official Capacity as
Secretary of State of Texas; and the State of Texas,

*Appellants*,

v.

Mexican American Legislative Caucus, Texas House of
Representatives; Roland Gutierrez; Sarah Eckhardt;
Ruben Cortez, Jr.; and Tejano Democrats,

*Appellees*

On Direct Appeal from the
250th District Court of Travis County, Texas

**Argued March 23, 2022**

JUSTICE LEHRMANN delivered the opinion of the Court, in which
Justice Devine, Justice Busby, Justice Bland, Justice Huddle, and
Justice Young joined.

CHIEF JUSTICE HECHT filed a dissenting opinion, in which Justice
Boyd and Justice Blacklock joined.

Two sets of plaintiffs—the Mexican American Legislative Caucus
(MALC) and a group of plaintiffs we and the parties refer to as the

Gutierrez Plaintiffs—sued various State defendants claiming that the recently enacted laws reapportioning Texas's legislative districts violate Article III, Sections 26 and 28 of the Texas Constitution. Those now-consolidated cases come to us on direct appeal of the trial court's order largely denying the defendants' pleas to the jurisdiction. The defendants challenge jurisdiction on multiple grounds, including mootness, lack of standing, and sovereign immunity. We hold: (1) the claims are not moot; (2) MALC lacks associational standing to pursue its claims; (3) at least one of the Gutierrez Plaintiffs has standing to pursue each claim against a proper defendant, but not the State of Texas; (4) the Gutierrez Plaintiffs' Section 26 claim is not barred by sovereign immunity; (5) the Gutierrez Plaintiffs' Section 28 claim is barred by sovereign immunity; and (6) the Gutierrez Plaintiffs should have the opportunity to replead their Section 26 claim against a proper defendant. We reverse the trial court's order in part, dismiss MALC's claims and the Gutierrez Plaintiffs' Section 28 claim for lack of jurisdiction, and remand the case to the trial court.

## I. Background

Under federal law, the U.S. Census Bureau is required to release a census of the population on the first day of April every ten years. 13 U.S.C. § 141(a). Texas uses this data to reapportion its legislative districts in accordance with the United States and Texas Constitutions. *See Reynolds v. Sims*, 377 U.S. 533, 577 (1964) (holding that "the Equal Protection Clause requires that a State make an honest and good faith effort to construct districts, in both houses of its legislature, as nearly of equal population as is practicable"); TEX. CONST. art. III, § 28 ("The

Legislature shall, at its first regular session after the publication of each United States decennial census, apportion the state into senatorial and representative districts, agreeable to the provisions of Sections 25 and 26 . . . ."); *id.* art. III, § 26 (governing apportionment of legislative districts among counties).

In 2021, the COVID-19 pandemic caused the Census Bureau to miss the April 1 deadline for release of the data from the 2020 census, and the Bureau published that data on September 16, 2021. In the meantime, the Texas Legislature's 87th regular session ran from January 12, 2021, to May 31, 2021, and thus concluded several months before the data's release. On September 7, 2021, Governor Greg Abbott called a special session of the Legislature to commence on September 20 and specifically address reapportionment.

During that special (third called) session, the Legislature passed H.B. 1 and S.B. 4, the two bills that reapportioned the districts for the Texas House and Senate, respectively. The Governor signed the bills into law on October 25. One of the complaints at issue relates to the manner in which H.B. 1 adjusts the House districts within Cameron County. Under the old map, House Districts 37 and 38 were wholly contained within Cameron County, and House District 35 was shared between Cameron and Hidalgo Counties. Under the new law, District 38 remains wholly contained within Cameron County and District 35 remains shared between Cameron and Hidalgo Counties, but District 37 is now shared between Cameron and Willacy Counties.

As relevant here, two lawsuits challenging the reapportionment laws were filed. First, on November 3, 2021, the Mexican American

Legislative Caucus, Texas House of Representatives (MALC), "the nation's oldest and largest Latino legislative caucus," sued Governor Abbott and Secretary of State John Scott in their official capacities, challenging the constitutionality of H.B. 1. MALC alleged that H.B. 1 violates the so-called "county line rule" in Article III, Section 26 of the Texas Constitution by providing only one district wholly contained within Cameron County even though the county's population is sufficient to support two such districts. MALC sought a declaration that H.B. 1 violates Section 26 and requested temporary and permanent injunctions "enjoining the administration and oversight of upcoming primary and general elections" under the unconstitutional law. The Governor and Secretary petitioned the Chief Justice of this Court to convene a special three-judge district court to hear the case. *See* TEX. GOV'T CODE § 22A.001(a)(2) (authorizing the attorney general to file such a petition in a suit against a state defendant involving the apportionment of certain electoral districts). That petition was granted, and the case was transferred to the three-judge court.

Shortly thereafter, on November 22, 2021, a second lawsuit regarding the reapportionment laws was filed—this time against the State of Texas—by two state senators (Roland Gutierrez and Sarah Eckhardt), a candidate for House District 37 (Ruben Cortez Jr.), and the Tejano Democrats (collectively, the "Gutierrez Plaintiffs"). The Gutierrez Plaintiffs similarly alleged that H.B. 1 violates Article III, Section 26, and they further alleged that both H.B. 1 and S.B. 4 violate Article III, Section 28 because they were enacted before, rather than "at," the "first regular session after the publication of [the] United States

4

decennial census." The Gutierrez Plaintiffs requested a declaration that H.B. 1 and S.B. 4 are unconstitutional and sought to enjoin their implementation. The three-judge district court transferred the second-filed suit to itself and consolidated the causes. *Id.* § 22A.003(b).

The two sets of defendants filed pleas to the jurisdiction. The Governor and Secretary argued that MALC lacked standing because it had not established that the new House map injured MALC or any of its members. They further argued that MALC failed to plead a viable claim on the merits and thus failed to establish a waiver of sovereign immunity. The State similarly argued that the Gutierrez Plaintiffs lacked standing and that their claims were barred by sovereign immunity.[1]

The trial court held a combined evidentiary hearing on the pleas to the jurisdiction and the plaintiffs' motions for temporary injunctive relief. As to MALC's claims, the trial court denied the Governor and Secretary's plea and denied MALC's motion. As to the Gutierrez Plaintiffs' claims, the trial court granted the State's plea with respect to the claims for injunctive relief, dismissing those claims, and denied the plea with respect to the claims for declaratory relief. Thus, what remains pending after the trial court's order are both sets of plaintiffs' claims for declaratory relief and MALC's request for a permanent injunction.

On December 7, 2021, the defendants filed a direct appeal to this Court of the trial court's order on the pleas to the jurisdiction. *See* TEX.

---

[1] After the pleas to the jurisdiction were filed, MALC amended its petition to add the State as a defendant but did not serve it with citation.

5

CIV. PRAC. & REM. CODE § 51.014(a)(8) (authorizing an interlocutory appeal from an order that grants or denies a plea to the jurisdiction by a governmental unit); TEX. GOV'T CODE § 22A.006(a) ("An appeal from an appealable interlocutory order or final judgment of a special three judge district court is to the supreme court.").[2] In their response to the defendants' statement of jurisdiction in this Court, the plaintiffs stated that they were not "ask[ing] this Court to disturb the current election cycle at this point in the litigation and in light of the Court's opinion in *In re Khanoyan*," in which this Court explained the judicial limitations on issuing relief that would disrupt an ongoing election process. *See* 637 S.W.3d 762, 764–66 (Tex. 2022). The plaintiffs further requested expedited consideration of the case to "allow the parties time to litigate the constitutionality of the 2021 maps in time for the 2023 regular legislative session." We granted the appeal.

The defendants argue that the district court erred in denying their pleas to the jurisdiction and present three overarching grounds for reversal: (1) the plaintiffs seek an improper advisory opinion because "there is no longer a live controversy between the parties"; (2) the plaintiffs lack standing; and (3) the plaintiffs' claims are barred by sovereign immunity. We address the grounds in the order presented.

---

[2] The portions of the trial court's order denying MALC's motion for temporary injunction and granting the State's plea to the jurisdiction as to the Gutierrez Plaintiffs' claims for injunctive relief were not appealed and are not before us.

## II. Standard of Review

A plea to the jurisdiction is a "dilatory plea" that challenges a court's jurisdiction to hear the case. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). A plea may challenge whether the plaintiff has alleged facts that affirmatively demonstrate jurisdiction or the existence of those jurisdictional facts. *Id.* For the former, we resolve the plea based solely on the pleadings. *Id.* For the latter, our review mirrors that of a traditional motion for summary judgment. *Id.*

## III. Mootness

Under the Texas Constitution's separation-of-powers doctrine, courts lack jurisdiction to issue an advisory opinion, the "distinctive feature" of which is that it "decides an abstract question of law without binding the parties." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993); TEX. CONST. art. II, § 1. We thus lack jurisdiction to issue an opinion on a moot controversy. *See Heckman v. Williamson County*, 369 S.W.3d 137, 162 (Tex. 2012). Summarizing black-letter law on mootness, we explained in *Heckman* that "[a] case becomes moot if, since the time of filing, there has ceased to exist a justiciable controversy between the parties—that is, if the issues presented are no longer 'live,' or if the parties lack a legally cognizable interest in the outcome." *Id.* (citations omitted). "Put simply," we continued, "a case is moot when the court's action on the merits cannot affect the parties' rights or interests." *Id.* However, mootness is difficult to establish. The party asserting it must prove that intervening events make it "*impossible* for a court to grant *any* effectual relief whatever to

7

the prevailing party." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016) (emphases added) (citation omitted).

The defendants here assert that this controversy is moot because, by expressly disclaiming in this Court any request for relief that would disturb the current (2022) election cycle, the plaintiffs effectively concede that they seek the Court's opinion about the constitutionality of H.B. 1 and S.B. 4 solely to guide the Legislature when it again undertakes reapportionment during the 2023 regular session. Such an opinion, the defendants assert, would clearly be advisory (or, said differently, would resolve a moot controversy) because it would have no effect on the laws being challenged in this suit.[3]

The plaintiffs disagree with both the defendants' characterization of the plaintiffs' "disclaimer" and its effect on the existence of a live controversy. The plaintiffs contend that they merely clarified in their response to the statement of jurisdiction, filed on January 18, 2022, that they were not asking *this Court* to enjoin the March 2022 primary because (1) they did not appeal the trial court's interlocutory rulings denying or dismissing injunctive relief and (2) *Khanoyan* foreshadowed the futility of such a request. The plaintiffs further argue that their existing claims for declaratory relief invalidating H.B. 1 and S.B. 4 are live disputes, and that the trial court retains jurisdiction to declare the bills unconstitutional and then consider the propriety of permanent injunctive relief. And to the extent that injunctive relief before the 2022

---

[3] The defendants do not expressly use the word "moot," but they impliedly do so by asserting that "there is no longer a live controversy between the parties."

8

general election is unavailable under *Khanoyan*, the plaintiffs contend that such relief is nevertheless available to enjoin the challenged laws in future elections, as the defendants' assertion that the Legislature will enact new reapportionment laws during the 2023 session is mere speculation.

In light of the plaintiffs' clarification of the relief they continue to seek in this suit, we cannot conclude, as the dissent does, that they have clearly abandoned any request for relief that relates to the 2022 election. *Post* at 2 (Hecht, C.J., dissenting). That said, we recognize that, because the primary has already taken place, the likelihood of obtaining judicial relief that would disturb the general election is exceedingly low. *See Khanoyan*, 637 S.W.3d at 767 ("Both because of where we are in the electoral calendar [the primary process had already begun] and because of the likelihood of substantial harm that would flow from any judicial action, the relief Relators seek [invalidating challenged precinct maps] transgresses this Court's settled limits on judicial interference with elections."). But courts are not without *jurisdiction* to grant such relief, and we cannot say that it is "impossible" that a judgment would "grant any effectual relief whatever" to the plaintiffs. *Campbell-Ewald*, 577 U.S. at 161. The plaintiffs challenge existing statutes and seek declaratory and injunctive relief in the trial court regarding the effect of those statutes on the 2022 election. We hold that a live controversy remains and turn to whether the plaintiffs have standing to assert their claims.

9

## IV. Standing

We recently reiterated that the "Texas standing requirements parallel the federal test for Article III standing," such that a "plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *In re Abbott*, 601 S.W.3d 802, 807 (Tex. 2020) (citation omitted); *Allen v. Wright*, 468 U.S. 737, 751 (1984). To establish standing, then, a plaintiff must show (1) an "injury in fact" that is (2) "fairly traceable" to the defendant's challenged action and (3) redressable by a favorable decision. *Abbott*, 601 S.W.3d at 808; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Such a showing ensures the existence of "a real controversy between the parties" that "will be actually determined by the judicial declaration sought." *Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001) (citation omitted).

### A. MALC's Associational Standing

MALC seeks a declaration that H.B. 1 violates Article III, Section 26 of the Texas Constitution and an injunction restraining the defendants from conducting elections under that law. MALC claims "associational standing" to pursue those claims on behalf of its members. Adopting the United States Supreme Court's standard for associational standing, we have held that "an association has standing to sue on behalf of its members when '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Tex. Ass'n of Bus.*, 852 S.W.2d at 447 (quoting

10

*Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)). In other words, associational standing requires establishing everything that an individual plaintiff would have to establish, plus satisfying additional burdens that apply only to associational standing. To properly address MALC's associational standing, we begin with a discussion of the constitutional provision at issue and the dispute about what it requires.

Article III, Section 26 of the Texas Constitution, the source of the county-line rule, was adopted in 1876 and provides:

> The members of the House of Representatives shall be apportioned among the several counties, according to the number of population in each, as nearly as may be, on a ratio obtained by dividing the population of the State, as ascertained by the most recent United States census, by the number of members of which the House is composed; provided, that whenever a single county has sufficient population to be entitled to a Representative, such county shall be formed into a separate Representative District, and when two or more counties are required to make up the ratio of representation, such counties shall be contiguous to each other; and when any one county has more than sufficient population to be entitled to one or more representatives, such representative or representatives shall be apportioned to such county, and for any surplus of population it may be joined in a Representative District with any other contiguous county or counties.

TEX. CONST. art. III, § 26. In *Smith v. Craddick*, we discussed the parameters of this provision:

> Representation in the House of Representatives is thereby apportioned among the counties of the state according to population. If the population of a county is so small as not to entitle that county to one representative, two or more contiguous Counties may be joined in a separate district.

11

When one county has a population which exceeds that which entitles it to one or more representatives, that County is to be apportioned to what it is entitled, and the County may be joined with contiguous counties for the district representative to which the surplus population entitles it.

471 S.W.2d 375, 376 (Tex. 1971). Under Section 26, barring any conflict with the Fourteenth Amendment's requirement of "substantially equal legislative representation for all citizens of a state"—i.e., the one-person, one-vote rule, which is not at issue here—apportionment of House districts is "by county," and when the population is sufficient, district lines generally follow county lines. *Id.* at 377 (citing *Reynolds*, 377 U.S. at 533). In requiring that House districts be apportioned by county, Section 26 serves a markedly different purpose than the laws that ensure voting rights are not abridged on the basis of race. *See, e.g.*, Voting Rights Act § 2, 52 U.S.C. § 10301(a).

The parties agree that when a county's population exceeds the number required to make up a single House district (dubbed the "ideal district size"), at least one district must be wholly contained within the county's borders. They part ways on how the provision applies when a county's population exceeds the number required to make up multiple districts—that is, when the population is more than twice the ideal district size. Cameron County, for example, has a population of 421,017, which is 2.17 times the current ideal district size of 194,303. MALC asserts that for a county with that population, two districts must be wholly contained within its borders (again, absent conflict with the one-person, one-vote requirement). The Governor and Secretary respond that so long as one district is wholly contained within that county and

12

any additional districts are joined only with contiguous counties, Section 26 is satisfied.

With those clarifications, we turn to MALC's associational standing to pursue a Section 26 claim. The Governor and Secretary argue that MALC meets neither the first nor second requirement to establish this type of standing. As to the first—its members would otherwise have standing to sue in their own right—they argue that MALC has identified no individual members who have suffered a particularized injury from the allegedly unconstitutional law. MALC responds that (1) its petition generally states that its members include the Texas House Representatives who represent and are residents of the challenged districts and (2) one of its members, Representative Alex Dominguez, currently represents House District 37 but, because of reapportionment under H.B. 1, is ineligible to run for reelection.

Representative Dominguez is the only specifically named MALC member. His ineligibility to run for reelection, we agree, *could* constitute a particularized injury traceable to the challenged action if there were any indication that he intended to run for that seat but was prevented from doing so. However, as the Governor and Secretary note, Representative Dominguez is currently running for a state Senate seat, which is not affected by the county-line rule, and there is no allegation or evidence that he would have run for reelection in the House rather than for a Senate seat but for H.B. 1. Thus, the fact that Representative Dominguez no longer resides in District 37 does not establish a concrete, particularized injury traceable to H.B. 1's reapportionment of the House districts. Moreover, Representative Dominguez resides in the new

13

District 38, which remains wholly within Cameron County. Our disposition today makes it unnecessary to resolve whether residents of a district that is wholly contained within a single county could satisfy the injury-in-fact prong of standing, but at the very least, a Cameron County resident of one of the other two districts would have a far less abstract injury.

MALC fails to identify any other specific individual members. Instead, it generally claims that its members who are residents of Cameron County "have an interest in maintaining Cameron County's representational power, which is embodied by the Texas Constitution's county line rule," and "that power will be diluted by splitting Cameron County unnecessarily into two districts extending in two different directions." The Governor and Secretary note that Cameron County voters will still fully control two House districts, with 100% control of District 38 and 89.1% of the voting-age population in District 37. Accordingly, they argue, the reapportionment law has not caused any resident to suffer "a 'vote dilution' injury." MALC responds that Cameron County residents, including two of its members, will nevertheless suffer a concrete deprivation of their constitutional right to two "whole state representative[s]" rather than "one whole state representative and two partial representatives." This harm, MALC explains, is in the nature of "representational dilution" because "[t]he residents of Texas counties have their practical interests served better when their political representation is unified, rather than split apart."

As an initial matter, we note that to establish associational standing, general references to members are usually insufficient. *See,*

14

*e.g.*, *Summers v. Earth Island Inst.*, 555 U.S. 488, 498–99 (2009) ("Th[e] requirement of naming the affected members has never been dispensed with in light of statistical probabilities, but only where all the members of the organization are affected by the challenged activity."). MALC does not claim that all its members are injured by the alleged "representational dilution," and indeed it is possible that some members might be affected in contradictory ways, as we discuss below in assessing the related question of whether the litigation is germane to the organizational purpose. The mere likelihood that some member of an association would have individual standing has never been enough. If it were, the cases involving environmental standing would all have come out differently. *Lujan*, for example, involved minute dissection of two individual members' standing. *See* 504 U.S. at 563–67. And in *Sierra Club v. Morton*, the Court did not dispute that the Sierra Club surely had some members who would have been aggrieved by the challenged development; however, without saying who they were, the Sierra Club could not satisfy the first requirement to establish associational standing. 405 U.S. 727, 735 (1972).

These requirements may seem technical, but they are fundamental. Without standing, the courts cannot proceed at all, and the party who invokes the courts' jurisdiction "bears the burden of establishing these elements" of standing; it is not the duty of the other side, or of the courts, to negate them. *Lujan*, 504 U.S. at 561. The lack of specifically identified members—who are then subject to scrutiny to ensure that they would in fact have standing on their own—calls into

15

question whether MALC has established the first prong of associational standing.

Nonetheless, we can assume without deciding that MALC has met this initial burden. Moreover, *if* MALC's substantive interpretation of Section 26 is correct, we agree that Cameron County's residents are being deprived of their right, under the Texas Constitution, to two representatives fully devoted to serving the interests of those residents rather than the residents of both Cameron County and a neighboring county. That this harm is shared among county residents does not make it a "generalized grievance" that cannot confer individual standing. *See id.* at 575 (quoting *United States v. Richardson*, 418 U.S. 166, 171 (1974) (holding that resting standing on a "generalized grievance" is inconsistent with "the framework of Article III" because "the impact on [the plaintiff] is plainly undifferentiated and 'common to all members of the public'")). The Supreme Court has explained that such generalized grievances involve harm that "is not only widely shared, but is also of an abstract and indefinite nature—for example, harm to the 'common concern for obedience to law.'" *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 23 (1998) (citation omitted). The harm at issue here is not abstract but quite specific: Cameron County residents are allegedly entitled to two whole representative districts within Cameron County but, under H.B. 1, they have only one. If a Cameron County resident does not have standing to pursue a Section 26 claim, we struggle to envision a plaintiff who would.

That said, we recognize that standing requirements render some constitutional violations particularly (and frustratingly) unamenable to

challenge. *Richardson*, cited above, illustrates this point. There, the plaintiff argued that keeping CIA expenditures secret violated the U.S. Constitution's requirement that such amounts be made public. 418 U.S. at 168. The Supreme Court held that Richardson did not have standing despite agreeing with the contention that "if [he] is not permitted to litigate this issue, no one can do so." *Id.* at 179. Voting in a lawfully apportioned district, however, is a personal right; participating in the political process is a fundamental individual liberty, not merely a generic and undifferentiated one. *See, e.g.*, *Khanoyan*, 637 S.W.3d at 763. Section 26 provides the kind of right that someone will be able to vindicate.

However, even assuming that MALC has alleged that at least one of its members has individual standing to pursue a Section 26 claim, associational standing requires more. The Governor and Secretary also argue that MALC fails to meet the second requirement of associational standing: that the interests it seeks to protect are germane to its purpose. *Tex. Ass'n of Bus.*, 852 S.W.2d at 447. We agree.

Importantly, to satisfy this element, the interest that is germane to the organization's purpose "must also relate to the interest by which its members would 'have standing to sue in their own right.'" *Save Our Springs All., Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 886 (Tex. App.—Austin 2010, pet. denied); *Mosaic Residential N. Condo. Ass'n v. 5925 Almeda N. Tower, L.P.*, No. 01-16-00414-CV, 2018 WL 5070728, at *12 (Tex. App.—Houston [1st Dist.] Oct. 18, 2018, no pet.). For example, in *Save Our Springs Alliance*, an organization (SOS Alliance) that was formed to protect the Edwards Aquifer and to prevent and reverse

17

pollution of Barton Springs claimed associational standing to challenge a city's development agreements based on injuries to SOS Alliance's members that were unrelated to increased pollution to the aquifer, such as increased traffic and decreased property values. 304 S.W.3d at 886. Because the members' interests that gave them individual standing to bring the claims asserted were not themselves germane to SOS Alliance's purpose, SOS Alliance could not satisfy the second prong of associational standing. *Id.* at 886–87. By contrast, in *Hays County v. Hays County Water Planning Partnership*, the threatened injuries that allowed the members of a community group to sue the county in their own right to invalidate a transportation plan—involving loss of property values based on the proposed development—were the specific "kinds of community issues" that the group was created to address. 106 S.W.3d 349, 357 (Tex. App.—Austin 2001, no pet.). Accordingly, the court held that the members' interests the group sought to protect through its lawsuit were germane to its organizational purpose. *Id.*

We agree with this required connection between the first and second prongs of associational standing. Without it, "an association that has an interest against a challenged activity [could] obtain standing by adding a member who has individual standing to sue based on his own unrelated interest against the same activity." *Save Our Springs All.*, 304 S.W.3d at 886. MALC has failed to make the requisite connection.

MALC alleges that its mission includes "maintaining and expanding Latino representation across elected offices in Texas." It further alleges that, although all three districts lying wholly or partly within Cameron County contain a Hispanic majority, H.B. 1 has

18

nevertheless reduced the Latino population percentage in two of those districts. In this way, MALC explains, its Section 26 claims are "germane to its organizational purpose." But as MALC itself asserts, the injury that gives a Cameron County resident individual standing to pursue a Section 26 claim is the deprivation of the right to have two "whole state representative[s]" representing the interests of the county and its residents. That injury is shared by county residents regardless of race, and the county-line rule applies across the State irrespective of county geography or demographics. Indeed, one can hypothesize an application of Section 26 that would objectively cut against MALC's stated purposes by preventing the placement of Latinos from different counties into the same district, thus diffusing rather than enhancing their political might. Thus, the injury that gives some MALC members standing to sue in their own right as Cameron County residents for a Section 26 violation is unrelated to MALC's organizational purpose.

MALC also asserts that, as a legislative caucus whose members are Texas House Representatives, it has a general interest in opposing unconstitutional legislation. However, MALC does not argue here that its members have standing to sue in their own right based on their duties as legislators, so again, the requisite connection between the interest giving rise to the members' standing and the interest that is germane to MALC's purpose is lacking.

Accordingly, MALC does not have associational standing to bring its claims. Because MALC does not assert any other basis for standing, its claims must be dismissed for lack of subject matter jurisdiction.

19

## B. The Gutierrez Plaintiffs' Standing

As noted, like MALC, the Gutierrez Plaintiffs seek a declaratory judgment that H.B. 1 violates Section 26's county-line rule. They also seek a declaratory judgment that both H.B. 1 and S.B. 4 violate Article III, Section 28. Because Section 28 requires the Legislature to apportion the senatorial and representative districts "at its first regular session after the publication of each United States decennial census," the Gutierrez Plaintiffs assert that the Legislature violated that provision by undertaking the reapportionment process during an earlier special session. Although there are four Gutierrez Plaintiffs, they defend the standing of only two—one for each claim. *See Heckman*, 369 S.W.3d at 152 n.64 (explaining that "where there are multiple plaintiffs in a case, who seek injunctive or declaratory relief (or both), who sue individually, and who all seek the same relief . . . the court need not analyze the standing of more than one plaintiff—so long as that plaintiff has standing to pursue as much or more relief than any of the other plaintiffs").

First, they argue that Ruben Cortez Jr., a candidate for House District 37, has standing to pursue the Section 26 claim. They contend that under H.B. 1, District 37 now comprises a much larger geographic territory than before, requiring a greater expenditure of campaign resources. They further argue that Cortez has standing as a resident of Cameron County and District 37, which is one of the districts that is *not* wholly contained within Cameron County. As discussed above with regard to the first element of MALC's associational standing, we agree that Cortez has sufficiently alleged a particularized injury as a Cameron

20

County (and, notably, as a District 37) resident. We therefore need not address whether he has alleged a sufficient injury as a candidate for office.[4]

Next, the Gutierrez Plaintiffs argue that Roland Gutierrez, a state senator elected in 2020, has standing to pursue a Section 28 claim. State senators are elected to serve four-year terms; however, following reapportionment, all senators must stand for reelection under the new district maps. TEX. CONST. art. III, § 3. The Gutierrez Plaintiffs assert that because "the first legitimate opportunity for the Legislature to reapportion is in 2023 [at the first regular session after the publication of the decennial census], Senator Gutierrez's tenure is protected until 2024, when his four-year term expires." The Legislature's unconstitutional apportionment during a special session in 2021, they argue, requires Senator Gutierrez to run for reelection in 2022 and thus deprives him of his right to a four-year term. The State responds that Senator Gutierrez's "injury" of being forced to run for reelection before the expiration of his current term is traceable not to any wrongdoing by the State, but to the Texas Constitution's requirement that senators stand for reelection when districts are reapportioned.

On this point, we agree with the Gutierrez Plaintiffs. It is true that the Texas Constitution requires Senator Gutierrez to run for reelection, but the basis of the Section 28 claim is that the circumstances giving rise to that requirement would not have arisen if not for the

---

[4] We note that during the pendency of this cause, Cortez lost the Democratic primary runoff election for House District 37. Accordingly, he no longer has standing *as a candidate* to pursue the prospective relief he seeks.

allegedly unconstitutional reapportionment. That is sufficient for standing purposes. *See Bennett v. Spear*, 520 U.S. 154, 168–69 (1997) (explaining that traceability does not require the defendant's actions to be "the very last step in the chain of causation").

The State further contends that the Gutierrez Plaintiffs' alleged injury is not traceable to or redressable by the State of Texas itself—the only defendant against whom they asserted their claims—providing an additional reason that they lack standing to pursue the declaratory relief they request. Prior suits challenging reapportionment laws have typically been brought against state officials like the Governor, whose duties include ordering elections for officers of the state government and members of the United States Congress, TEX. ELEC. CODE § 3.003(a)(1), and the Secretary of State, who is the "chief election officer of the state," *id.* § 31.001(a). *See Clements v. Valles*, 620 S.W.2d 112, 113 (Tex. 1981) (plaintiffs sought a declaration of the unconstitutionality of a reapportionment bill and an injunction restraining the Governor, Attorney General, and Secretary of State from conducting elections pursuant to the bill); *Smith*, 471 S.W.2d at 375–76 (plaintiffs sought a declaration of the unconstitutionality of a reapportionment bill and an injunction restraining the Governor, Secretary of State, Chairman of the Democratic Executive Committee, and County Judge and County Clerk of Midland County from conducting elections pursuant to the bill).[5] The lack of requested relief against "the State" in these cases makes sense

---

[5] In *Perry v. Del Rio*, another redistricting case, some of the plaintiffs named the State as a defendant but ultimately nonsuited it. 66 S.W.3d 239, 246 (Tex. 2001).

because the State itself does not enforce election laws. *See Lewis v. Governor of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019) (holding that the plaintiffs, in challenging the constitutionality of a statute voiding local laws requiring compensation higher than the minimum wage, lacked standing under *Lujan* as to their claims against the attorney general, who had no authority to enforce the complained-of statute).

Though we have not been presented with the precise issue, our courts of appeals have generally held that challenges to the constitutionality of a statute are not properly brought against the State in the absence of an "enforcement connection" between the challenged provisions and the State itself. *Paxton v. Simmons*, 640 S.W.3d 588, 602–03 (Tex. App.—Dallas 2022, no pet. h.); *Ector Cnty. All. of Bus. v. Abbott*, No. 11-20-00206-CV, 2021 WL 4097106, at *10 (Tex. App.—Eastland Sept. 9, 2021, no pet.); *see also Holt v. Tex. Dep't of Ins.–Div. of Workers Comp.*, No. 03-17-00758-CV, 2018 WL 6695725, at *5 (Tex. App.—Austin Dec. 20, 2018, pet. denied) (holding, in suit challenging the constitutionality of certain Labor Code provisions, that the State was not a proper party to the lawsuit and affirming the trial court's dismissal of the State on a plea to the jurisdiction). In *Paxton*, the court reversed the trial court's denial of the plea to the jurisdiction filed by the State and the Attorney General in a suit involving a constitutional challenge to a Texas Property Code provision. 640 S.W.3d at 592–93. The plaintiff argued that the "State of Texas, via its legislature, directly passed the challenged statute and thus appears to have the most relevant connection to defending the constitutionality of that law." *Id.* at 603. However, in light of the absence of any enforcement authority

23

by the State, the court held that the plaintiff failed to allege sufficient facts to satisfy the traceability element of standing. *Id.*; *see Lujan*, 504 U.S. at 560–61 (the injury must be "fairly traceable" to the defendant's challenged action). Similarly, in *Ector County Alliance*, which involved a challenge to the constitutionality of the Texas Disaster Act and certain executive orders issued under it, the court of appeals held that the plaintiff lacked standing to seek relief against the State and the Governor where it "did not plead that the Governor or the State ever threatened to enforce any executive order [issued under the Act], and the Governor and the State have conceded that they do not have the authority to do so." 2021 WL 4097106, at *10.

Notably, Texas law requires that, in a lawsuit in which the constitutionality of a state statute is challenged and the attorney general is not a party or counsel, notice must be served on the attorney general, who may intervene in the suit without waiving the State's immunity. TEX. GOV'T CODE § 402.010. Similarly, in a proceeding brought under the Uniform Declaratory Judgments Act to declare a statute, ordinance, or franchise unconstitutional, "the attorney general of the state must . . . be served with a copy of the proceeding and is entitled to be heard," but neither the attorney general nor the State is required to be made a party to the proceeding. TEX. CIV. PRAC. & REM. CODE § 37.006(b).[6] This is consistent with the conclusion that the State

---

[6] By contrast, "[i]n any proceeding [under the UDJA] that involves the validity of a municipal ordinance or franchise, the municipality *must be made a party*." TEX. CIV. PRAC. & REM. CODE § 37.006(b) (emphasis added); *see Holt*, 2018 WL 6695725, at *5 (discussing the meaningful distinction between the

24

is not automatically a proper defendant in a suit challenging the constitutionality of a statute merely because the Legislature enacted it.[7] *Holt*, 2018 WL 6695725, at \*5; *cf. California v. Texas*, 141 S. Ct. 2104, 2114–15 (2021) (holding that the plaintiffs lacked standing to challenge an unenforceable statute).

We recognize that the Fifth Circuit has held to the contrary in addressing a challenge to a Texas statute establishing the requirements and procedures for a voter needing assistance to vote. *OCA-Greater Houston v. Texas*, 867 F.3d 604, 607, 613 (5th Cir. 2017). The plaintiff in *OCA* sued both the State and the Secretary of State, and the court held that the plaintiff had standing to sue both defendants, summarily stating that "[t]he facial invalidity of a Texas election statute is, without question, fairly traceable to and redressable by the State itself and its Secretary of State." *Id.* at 613. But while the Fifth Circuit explained the basis for its conclusion as to the Secretary of State—the "enforcement connection" to the statute was satisfied considering the Secretary's position as "the 'chief election officer of the state' [who] is instructed by statute to 'obtain and maintain uniformity in the application, operation, and interpretation of this code and of the election

---

UDJA's requirement that a municipality be "made a party" and its requirement that the Attorney General be "served with a copy of the proceeding").

[7] In discussing the UDJA's limited waiver of immunity for claims challenging the validity of statutes, we have explained that the waiver extends to "the relevant governmental entities." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 n.6 (Tex. 2009). The identity of the relevant governmental entity for waiver purposes necessarily depends on the statute being challenged.

25

laws outside this code'"—it provided no such analysis with respect to the State itself. *Id.* at 613–14 (internal citations omitted). Given the conclusory nature of the court's determination of standing as to the claims against the State, as well as the fact that another defendant with the proper enforcement connection to the statute had been named in that case, we decline to follow *OCA*'s bare holding here.

As the State itself has no enforcement authority with respect to election laws, and the State is the only defendant against which the Gutierrez Plaintiffs seek a declaration regarding the constitutionality of those laws, the Gutierrez Plaintiffs have failed to meet the traceability element of standing. However, if the pleadings "do not affirmatively demonstrate incurable defects in jurisdiction," we allow plaintiffs an opportunity to amend. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004). Declaratory-judgment claims challenging the validity of a statute may be brought against the relevant governmental entity. And again, our case law is replete with reapportionment challenges brought against proper defendants like the Governor and the Secretary of State. *E.g.*, *Clements*, 620 S.W.2d at 113; *Smith*, 471 S.W.2d at 375–76.

The State asserts that incurable defects in jurisdiction exist for three reasons, two of which we have already rejected (that the plaintiffs seek an advisory opinion and lack a cognizable injury in fact). We turn to the third—sovereign immunity—to determine whether the case must be dismissed rather than remanded.

26

## V. Sovereign Immunity

Although the UDJA generally waives immunity for declaratory-judgment claims challenging the validity of statutes, we have held that "immunity from suit is not waived if the constitutional claims are facially invalid." *Klumb v. Houston Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 13 (Tex. 2015). The State asserts that both constitutional claims are facially invalid and thus barred by immunity. Whether that is so hinges on our interpretation of the provisions at issue. We recently reaffirmed that "[o]ur guiding principle when interpreting the Texas Constitution is to give effect to the intent of the voters who adopted it." *Degan v. Bd. of Trs. of Dall. Police & Fire Pension Sys.*, 594 S.W.3d 309, 313 (Tex. 2020). In doing so, we "presume that the framers carefully chose the language," "interpret their words accordingly," and "may consider contextual factors such as 'the history of the legislation, the conditions and spirit of the times, the prevailing sentiments of the people, the evils intended to be remedied, and the good to be accomplished.'" *Id.* (quoting *Harris Cnty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009)).

We also emphasize, however, that our analysis of these constitutional provisions arises as part of our consideration of *jurisdiction*.[8] This Court always has jurisdiction to determine its own,

---

[8] *Cf., e.g.*, *In re Lazy W Dist. No. 1*, 493 S.W.3d 538, 544 (Tex. 2016) ("Governmental immunity from suit 'implicates a court's subject-matter jurisdiction over pending claims, and without jurisdiction the court cannot proceed at all in any cause'. The trial court had the obligation to consider the . . . assertion of immunity when the plea to the jurisdiction was filed. We

and the lower courts', jurisdiction. *Houston Mun. Emps. Pension Sys. v. Ferrell*, 248 S.W.3d 151, 158 (Tex. 2007). As in every Texas case involving sovereign immunity, this jurisdictional inquiry touches the merits because, as noted, courts lack jurisdiction to proceed if the claim appears "facially invalid." *Klumb*, 458 S.W.3d at 13. We go no further than necessary to determine jurisdiction.

## A. Section 26

We first address the validity of the Gutierrez Plaintiffs' claim for a declaratory judgment that H.B. 1 violates the county-line rule in Article III, Section 26. As discussed below, we hold that the claim is not facially invalid and thus not barred by immunity. The ultimate merits determination remains open for additional proceedings on remand if the parties pursue it.

Section 26 begins: "The members of the House of Representatives shall be apportioned among the several counties, according to the number of population in each, as nearly as may be, on a ratio obtained by dividing the population of the State, as ascertained by the most recent United States census, by the number of members of which the House is composed." TEX. CONST. art. III, § 26. As discussed above, that "ratio" yields what the parties label the "ideal district size," which is 194,303 based on the 2020 census. Section 26 goes on to state that "whenever a single county has sufficient population to be entitled to a

do not hold that a trial court must make an early ruling in every situation, only that the trial court did not abuse its discretion in determining to do so here." (internal footnotes omitted)).

28

Representative, such county shall be formed into a separate Representative District." *Id.* The parties agree that under Section 26, a county with a population of the ideal district size is entitled to its own House district.

Section 26 then addresses what happens "when any one county has more than sufficient population to be entitled to one or more representatives"; in that case, "such representative or representatives shall be apportioned to such county, and for any surplus of population it may be joined in a Representative District with any other contiguous county or counties." *Id.* The parties again agree that if a county has a population of more than the ideal district size but less than twice the ideal district size, Section 26 entitles that county to one district wholly within its borders, with the surplus population joined in a district with a contiguous county or counties.

Cameron County, with a population of 421,017, is more than twice the ideal district size. The State argues that H.B. 1 facially complies with Section 26 because it apportions one House district entirely to Cameron County—District 38—and joins the "surplus population" with two "contiguous . . . counties" to form District 35 (with Hidalgo County) and District 37 (with Willacy County). The Gutierrez Plaintiffs respond that a county with Cameron's population is entitled to two House districts within its borders, with the surplus population joined with one other adjacent district, not two.

We conclude that the Gutierrez Plaintiffs' arguments are more than sufficient to survive a sovereign-immunity challenge at this stage of the proceedings. Section 26 states that a county with a sufficient

population for "more" than one representative is entitled to be apportioned "such . . . representatives." *Then*, any "surplus of population" is joined with a "contiguous county or counties." We interpreted Section 26 in this manner in *Smith*, explaining:

> [For] a county which already has one or more representatives allocated thereto, it becomes permissible to join a portion of that county (in which the surplus population reside and which is not included in another district within that county) with contiguous area of another county to form a district. . . . It is still required that a county receive the member *or members* to which that county's own population is entitled when the ideal district population is substantially equalled or is exceeded.

471 S.W.2d at 378 (emphasis added). And we at least impliedly endorsed this interpretation again in *Clements*, stating that "the failure of the [reapportionment] plan in House Bill 960 to allot two representative districts to Nueces County is not justified by the necessity of complying with the Voting Rights Act" based on "evidence of two alternate plans which created two districts wholly within Nueces County and [complied with] the Voting Rights Act." 620 S.W.2d at 115. The State dismisses *Clements* as containing a "stray statement" that should not "override the plain language of the constitutional text." Even if the statement was dicta, it is wholly consistent with the constitutional text. By contrast, the State's interpretation appears to stretch Section 26's language and undermine its structure. And the State's argument is cursory at best in responding to both (1) the provision's mandate to apportion "representative*s*" to a county with sufficient population to be entitled to "more" than one and (2) the provision's use of the word "surplus" to describe the remaining population *after* those

30

representatives are apportioned.  TEX. CONST. art. III, § 26 (emphasis added).

As noted, we recognized in *Smith* that Section 26's requirements "are inferior to the necessity of complying with the Equal Protection Clause."  471 S.W.2d at 378.  However, the burden is on the State to show that noncompliance with Section 26 is "either required or justified to comply with the one-man, one-vote decisions."  *Id.*  Thus far, the State has asserted no such justification here.  The possibility that it could do so in further proceedings does not render the Gutierrez Plaintiffs' Section 26 claim facially invalid for purposes of whether immunity has been waived.  Accordingly, we hold that the State is not entitled to dismissal of that claim on immunity grounds.[9]

## B. Section 28

Finally, we address whether the Gutierrez Plaintiffs' Section 28 claim is barred by sovereign immunity.  Article III, Section 28 was amended to its current form in 1948 and states in pertinent part:

> The Legislature shall, at its first regular session after the publication of each United States decennial census,

---

[9] The dissent accuses us of resolving the merits after concluding the plaintiffs lack standing and giving those plaintiffs "exactly what they sued to obtain: an opinion of this Court siding with their interpretation of [Section 26]." *Post* at 3 (Hecht, C.J., dissenting).  Saying we "resolve[] the merits" of the claims is an erroneous characterization.  *Id.*  As we have emphasized, we address only whether the claims are barred by sovereign immunity, an additional jurisdictional hurdle presented by the State.  The *basis* for the State's assertion of sovereign immunity is that the claims are facially invalid, and we address the "merits" at this initial stage of the proceedings only to the extent necessary to grant the opportunity to replead.  We have not, as the dissent implies, decided the ultimate outcome of the case.

apporition the state into senatorial and representative districts, agreeable to the provisions of Sections 25 and 26 of this Article. In the event the Legislature shall at any such first regular session following the publication of a United States decennial census, fail to make such apportionment, same shall be done by the Legislative Redistricting Board of Texas . . . . Said Board shall assemble in the City of Austin within ninety (90) days after the final adjournment of such regular session. The Board shall, within sixty (60) days after assembling, apportion the state into senatorial and representative districts, or into senatorial or representative districts, as the failure of action of such Legislature may make necessary. . . . The Supreme Court of Texas shall have jurisdiction to compel such Board to perform its duties in accordance with the provisions of this section by writ of mandamus or other extraordinary writs conformable to the usages of law. . . .

TEX. CONST. art. III, § 28. The provision's interpretive commentary explains that although the Constitution had required reapportionment after each decennial census since 1876, no mechanism existed to enforce that obligation, and at the time of the 1948 amendment there had been no reapportionment since 1921. *Id.* interp. commentary (West 2007). Section 28 was thus amended to (1) create the Legislative Redistricting Board (LRB) to accomplish that task if the Legislature failed to do so and (2) give this Court jurisdiction to compel the LRB to fulfill its duties if necessary. *Id.* The Gutierrez Plaintiffs' Section 28 claim is premised on the assertion that because the decennial census data was released after the conclusion of the 2021 regular session, the Legislature could not undertake reapportionment until the 2023 regular session—"the first regular session following the release"—and thus violated Section 28 by doing so during an earlier special session.

32

In arguing that the Section 28 claim is facially invalid, the State asserts that while Section 28 requires the Legislature to apportion during the first regular session after publication of the census, it does not forbid apportionment at other times and thus allows it. Further, the State argues that interpreting Section 28 to foreclose reapportionment under the circumstances would cause Section 28 to violate the U.S. Constitution and thus open the State to malapportionment challenges under federal law. The Gutierrez Plaintiffs respond that Section 28 imposes a single, binding schedule for reapportionment that begins with the Legislature's having the opportunity to act during the identified first regular session after release of the census data. *See Mauzy v. Legis. Redistricting Bd.*, 471 S.W.2d 570, 573 (Tex. 1971) (holding that the "first regular session following the publication" of the census encompasses a regular session that was convened before publication so long as publication occurred during the session).

Citing *Walker v. Baker*, the Gutierrez Plaintiffs rely on the interpretive principle that "where a power is expressly given [by the Constitution] and the means by which, or the manner in which, it is to be exercised is prescribed, such means or manner is exclusive of all others." 196 S.W.2d 324, 327 (Tex. 1946) (citation omitted). However, the Gutierrez Plaintiffs read too much into *Walker* and the principle it espouses. The issue in that case was whether the Senate had the authority to convene itself in order to exercise its express power to consider the Governor's recess appointments. *Id.* at 326. In holding it did not, this Court examined the constitutional provisions governing the timing and manner of legislative sessions; those provisions "furnish a

33

regular session of the Senate every two years and a special session at such other times as the Legislature may be convened by the Governor." *Id.* at 328. We held that "[t]he means being thus expressly provided for the Senate to be in session and thereby to have an opportunity to consider the Governor's appointments, it follows that any authority in the Senate to convene itself at other times for that purpose is excluded." *Id.*

Importantly, we went on to reiterate another fundamental constitutional principle: the Legislature is vested with "all legislative power—the power to make, alter and repeal laws—not expressly or impliedly forbidden by other provisions of the State and Federal Constitutions." *Id.*; *see also Shepherd v. San Jacinto Junior Coll. Dist.*, 363 S.W.2d 742, 743 (Tex. 1962) (noting that "an act of a state legislature is legal when the Constitution contains no prohibition against it" and that such a prohibition must be "express" or at least "clearly implied"). Because that principle "applies to legislative power to be exercised by the Legislature," and "[c]onfirmation or rejection of the Governor's appointments is an *executive* function expressly delegated to the Senate," we rejected the argument that "the power asserted in this case exists because not expressly prohibited." *Walker*, 196 S.W.2d at 328 (emphasis added).

In apportioning legislative districts, the Legislature is exercising its legislative power to make laws, not "a power ordinarily and intrinsically belonging to another department of the government." *Id.* Section 28 provides a mechanism to ensure that the Legislature exercises this power in a timely fashion following each decennial census,

34

but it neither expressly nor impliedly forecloses this power from being exercised at another time. *See Mumme v. Mars*, 40 S.W.2d 31, 33 (Tex. 1931) ("[T]he enumeration in the Constitution of what the Legislature may or shall do in providing a system of education is not to be regarded as a limitation on the general power of the Legislature to pass laws on the subject . . . .").

The Gutierrez Plaintiffs argue that our precedent forecloses the State's reading of Section 28, but the case on which they rely does not contain the broad holding they discern. In *Mauzy*, the LRB convened to reapportion senatorial districts when the Legislature failed to do so during the 1971 regular session, and the courts then struck down the statute apportioning the representative districts. 471 S.W.2d at 572. We were asked whether the LRB had jurisdiction to apportion the districts in those circumstances. We first addressed the argument that because the 1970 decennial census was published during—not before— the 62nd Legislature's regular session, the LRB lacked any authority to reapportion under Section 28 even though the Legislature had failed to complete that task. *Id.* at 572–73. We rejected the argument, holding that the "first regular session following publication" of a census encompasses a regular session that was convened before publication so long as publication occurs "during the session." *Id.* at 573. Holding otherwise, we explained, "would require interpolation of the word 'convened' into the constitutional provision" and would defeat "the overriding intent of the people in adopting Sec[tion] 28": legislative apportionment at the regular session convened in January following the taking of the census (if publication was before or during the session),

35

"with jurisdiction in the [LRB] to complete the task in the event of legislative failure." *Id.*

Here, if the Legislature had failed to reapportion the legislative districts during the special session called by the Governor, the LRB would have no authority to "complete the task" because Section 28 is the source of both the LRB's power and this Court's authority to order the LRB to act. As Section 28 prescribes the means and manner in which that power may be exercised—via a set schedule when the Legislature fails to apportion at the "first regular session following the publication" of the decennial census—such means and manner "is exclusive of all others." *Walker*, 196 S.W.2d at 327. The same cannot be said of the Legislature's exercise of its legislative power.[10]

The Gutierrez Plaintiffs emphasize that since Section 28 was adopted, the Legislature has never (until now) first reapportioned state legislative districts during a special session. But neither has the Legislature been faced with such a lengthy delay in the release of the decennial census, and it is undisputed that the 2020 census data rendered the then-existing district maps unconstitutional. That the Legislature took unprecedented action to address an unprecedented situation says nothing about whether it exceeded its authority in doing so.

---

[10] In *Terrazas v. Ramirez*, we held that Section 28 does not "prohibit[] the Legislature from acting in later special or regular sessions after the constitutional authority of the [LRB] has expired." 829 S.W.2d 712, 726 (Tex. 1991). We were not asked, and did not opine on, whether Section 28 prohibits the Legislature from acting in earlier sessions.

36

Finally, the Gutierrez Plaintiffs argue that the State's interpretation leads to absurd results. Noting that the Texas Constitution provides for four-year senate terms but requires all senators to run for reelection following reapportionment, TEX. CONST. art. III, § 3, the Gutierrez Plaintiffs contend that Section 28 must be read to cabin the Legislature's reapportionment authority, lest the Legislature seek to perpetually interfere with the four-year senate terms by minimally altering districts every legislative session. For two reasons, we disagree that this argument assists the Gutierrez Plaintiffs in carrying their jurisdictional burden to show that their claim is not facially invalid.

First, as the State argues, the mere "specter" of such gamesmanship, which has never occurred, does not override the Constitution's plain text or the nature of the legislative authority that the plaintiffs contend has been restricted. Second, the Gutierrez Plaintiffs' interpretation leads to the equally, if not more, absurd result that the Legislature cannot reapportion legislative districts despite their undisputed, facial unconstitutionality. And that result is not a possibility; it is a factual certainty.

In sum, we hold that the Gutierrez Plaintiffs' claim for declaratory relief that H.B. 1 and S.B. 4 violate Article III, Section 28 is facially invalid and thus barred by sovereign immunity. The trial court therefore erred in denying the State's plea to the jurisdiction on that claim.

## VI. Conclusion

Because MALC lacks associational standing to bring its claims, the trial court erred in denying the Governor and Secretary's plea to the jurisdiction. We thus reverse that portion of the trial court's judgment and dismiss MALC's claims for lack of jurisdiction. Further, the Gutierrez Plaintiffs' Section 28 claim is facially invalid and barred by sovereign immunity, requiring its dismissal. However, plaintiff Ruben Cortez Jr. has standing to pursue the Section 26 claim against a proper State defendant, and sovereign immunity does not bar that claim. Although he did not sue the proper defendant, requiring reversal of the trial court's order as to the Section 26 claim, that defect is curable. Accordingly, we remand the case to the trial court to give the Gutierrez Plaintiffs the opportunity to replead.

Debra H. Lehrmann
Justice

**OPINION DELIVERED:** June 24, 2022

38